OPINION
 

 COLE, Circuit Judge.
 

 This appeal, which arises from the bankruptcy court’s disposition ■ of an adversary proceeding initiated by a Chapter 7 trustee, comes to us by way of our circuit’s Bankruptcy Appellate Panel (“BAP”). The appeal is brought by one of the defendants to the adversary proceeding, Julie A. Fordu, the former wife of the Debtor, Daniel Fordu. Ms. Fordu contends that the BAP erred by reversing two separate orders of the bankruptcy court: the first order granted partial summary judgment in her favor and the second order dismissed the trustee’s complaint. We are urged by Ms. Fordu to reverse the decision of the BAP and affirm the bankruptcy court’s orders. Ms. Fordu also seeks reversal of a third order of the bankruptcy court denying her motion for attorney fees and costs.
 
 [1]
 

 The issues before us are the same as those presented to the BAP: (1) whether the bankruptcy court erred by granting partial summary judgment in favor of Ms. Fordu after concluding that lottery proceeds won during her marriage to the Debtor constituted Ms. Fordu’s separate property in which the Debtor had no interest; (2) whether the bankruptcy court erred by concluding that an agreed dissolution decree entered by an Ohio domestic relations court — which dissolved the For-dus’ marriage and recited that the parties’ Separation Agreement was fair, just and equitable — precluded a finding by the bankruptcy court that the transfers effected by the Separation Agreement were subject to avoidance as fraudulent and/or
 
 *697
 
 preferential transfers; (3) whether the bankruptcy court erred in its dismissal of the trustee’s third and fourth causes of action without specifically ruling thereon; and (4) whether the bankruptcy court erred by denying attorney fees and costs to Ms. Fordu. For the reasons that follow, we REVERSE the bankruptcy court’s order granting Ms. Fordu’s motion for summary judgment and its judgment entry dismissing the trustee’s complaint. We AFFIRM the bankruptcy court’s order denying Ms. Fordu’s motion of allowance of bill of costs and attorney fees. We REMAND this case to the bankruptcy court for further proceedings consistent with this opinion.
 

 I.
 

 In 1986, Ms. Fordu redeemed an Ohio lottery ticket entitling her to winnings of $388,888, payable in annual installments of $19,444.40 through the year 2011. In 1990, the Fordus filed a petition to dissolve their marriage in the Common Pleas Court, Division of Domestic Relations, Lake County, Ohio (“Domestic Relations Court”).
 

 On January 17, 1991, the Fordus executed a Separation Agreement that was incorporated into an agreed dissolution decree entered by the Domestic Relations Court on May 6, 1991 (“Dissolution Decree”). The Separation Agreement provided that: (1) the Debtor would convey his entire right, title and interest in the marital residence to Ms. Fordu; (2) neither spouse would be responsible for supporting the other after the marriage ended; (3) the Debtor would not be required to pay alimony to Ms. Fordu; (4) Ms. Fordu would waive any claim to an interest in a restaurant business venture that the Debtor was about to undertake; and (5) the Debtor would relinquish any and all rights he may have had in the lottery proceeds, except for one-half of the proceeds of the lottery installment received in 1990.
 

 Approximately two years after the Dissolution Decree was entered, the Debt- or’s business failed and he filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Harold A. Corzin, the duly appointed trustee for the Debtor’s bankruptcy estate (“Trustee”), brought an action pursuant to § 544 of the Bankruptcy Code
 
 [2]
 
 against Ms. Fordu seeking to avoid and recover transfers that she received pursuant to the Separation Agreement. Invoking the “strong-arm” powers afforded by § 544(a) of the Bankruptcy Code,
 
 [3]
 
 the Trustee’s complaint sought the avoidance of the Debtor’s transfers of his interest in the marital residence and lottery proceeds as fraudulent and/or preferential transfers. Although the Trustee’s complaint did not specifically reference the state statutes under which relief was sought,
 
 [4]
 
 presumably the Trustee sought
 
 *698
 
 avoidance of the transfers made pursuant to the Separation Agreement under Ohio Rev.Code Ann. §§ 1336.04(A),
 
 [5]
 
 1336.05,
 
 [6]
 
 1313.56
 
 [7]
 
 and 1313.57.
 
 [8]
 

 
 *699
 
 While the Trustee’s complaint pled four distinct causes of action arising under various Bankruptcy Code and Ohio statutory provisions, the claims stem from the following essential allegations: (1) that, pursuant to the Separation Agreement incorporated into the Dissolution Decree, the Debtor transferred to Ms. Fordu his interest in approximately $380,000 in future lottery proceeds and the parties’ marital residence for less than reasonably equivalent value; (2) that the transfers effected by the Dissolution Decree were made with actual intent to hinder, delay, or defraud creditors, or were made at a time when the Debtor knew or should have known that he was insolvent or was about to engage in a business for which he lacked sufficient assets; (3) that Ms. Fordu was aware of, or should have known, this information; (4) that the Debtor preferred payment of Ms. Fordu’s claims over payment of the claims of other creditors; and (5) that, as a consequence of these transfers, Ms. Fordu held property of the Debtor’s bankruptcy estate that should be turned over to the Trustee. The Trustee’s complaint included the language necessary to support the state and federal causes of action asserted. Nevertheless, without affording the Trustee an opportunity to adduce evidence supporting his claims, the bankruptcy court entered the two separate orders described below that granted judgment in favor of Ms. Fordu as a matter of law.
 

 First, the bankruptcy court entered partial summary judgment against the Trustee, holding that the lottery ticket and its proceeds were the separate property of Ms. Fordu rather than marital property. As such, the Debtor held no interest in the lottery winnings to which the Trustee could succeed, the bankruptcy court concluded. Second, following opening statements at the trial of the Trustee’s remaining claims, the bankruptcy court entered a separate order granting Ms. Fordu’s motion to dismiss the claims.
 
 [9]
 
 Because the Dissolution Decree contained language reciting that the Separation Agreement constituted a fair, just and equitable division of the parties’ marital property, the bankruptcy court determined that principles of collateral estoppel precluded the Trustee from litigating the issue of whether the Debtor received reasonably equivalent value in exchange for the transfer of his interest in the lottery proceeds and the marital residence.
 
 [10]
 

 The bankruptcy court did not make a specific ruling on the Trustee’s third and fourth claims for relief, i.e., the state-law preference claim and the claim for turnover of property of the Debtor’s bankruptcy estate. Rather, the court simply entered a judgment dismissing these claims.
 
 *700
 
 Finally, the bankruptcy court denied Ms. Fordu’s motion for recovery of attorney fees and costs. Ms. Fordu’s motion asserted that the Trustee violated Fed. R. Bankr.P. 9011 by continuing prosecution of the adversary proceeding after the bankruptcy court had granted partial summary judgment in Ms. Fordu’s favor on the basis of its finding that the Debtor held no property interest in the lottery proceeds. Although the bankruptcy court ultimately rejected the Trustee’s arguments, it ruled that imposition of Rule 9011 sanctions was not justified because the Trustee’s claims were made after appropriate factual inquiry and warranted by existing law.
 

 The Trustee appealed to the BAP the bankruptcy court’s two orders that, collectively, resulted in dismissal of his complaint. Ms. Fordu cross-appealed the bankruptcy court’s denial of her motion for attorney fees and costs. The BAP reversed the bankruptcy court’s first order granting partial summary judgment, holding that the Debtor had an interest in the lottery proceeds at the time the parties’ marriage was dissolved. The BAP also reversed the bankruptcy court’s second order, which dismissed the Trustee’s remaining claims for relief, determining that the recitation in the Dissolution Decree that the Separation Agreement constituted a fair, just and equitable property' division did not preclude the Trustee from litigating the issue of whether the challenged transfers were made in exchange for reasonably equivalent value. Because the bankruptcy court failed to state its grounds for dismissing the Trustee’s third and fourth causes of action, the BAP reversed the bankruptcy court’s dismissal of these claims. Finally, the BAP affirmed the bankruptcy court’s denial of Ms. For-du’s motion for attorney fees and costs. The BAP remanded the adversary proceeding to the bankruptcy court for proceedings consistent with its opinion. This timely appeal followed.
 

 II.
 

 Athough the issue of what property is properly included in the debtor’s bankruptcy estate raises a federal question, it is well-settled that a debtor’s property rights are created and defined by state law. See
 
 Demczyk v. Mutual Life Ins. Co. (In re Graham Square, Inc.),
 
 126 F.3d 823, 827 (6th Cir.1997) (“To determine the extent of an estate’s interest in property, we must look to property rights defined under state law.”);
 
 see also Nobelman v. American Savings Bank,
 
 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (“Congress has ‘left the determination of property rights in the assets of a bankrupt’s estate to state law,’ since such ‘property rights are created and defined by state law.’ ”) (quoting
 
 Butner v. United States,
 
 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). We therefore must look to Ohio law to determine what interest, if any, the Debtor had in the lottery proceeds at the time his marriage was dissolved.
 

 Under Ohio law, the Ohio Lottery Commission recognizes the claimant who submits a winning ticket as the only individual entitled to receive payment of lottery winnings.
 
 See
 
 Ohio Rev.Code Ann. § 3770.07(A) (Anderson 1997). Section 3770.07(A) provides that persons entitled to lottery winnings cannot voluntarily assign their rights to receive payment; nor, with limited exceptions, may a third party attach lottery proceeds. Based on this Ohio statutory provision governing payment of lottery winnings, the bankruptcy court determined that the lottery proceeds were the separate property of Ms. Fordu and that the Debtor had no interest in them. Because the Debtor had no property interest in the lottery proceeds, the bankruptcy court reasoned, the Trustee could not assert an entitlement to the proceeds.
 

 Like the BAP, we conclude that the bankruptcy court’s focus on the Ohio statute governing the payment of and restricting assignment or attachment of lottery winnings was misdirected. The fact that,
 
 *701
 
 under Ohio Rev.Code Ann. § 3770.07(A), only Ms. Fordu could claim the lottery winnings and such winnings were not subject to attachment by her creditors is simply not legally relevant. Rather, the pertinent question is whether the Debtor had a property interest in the lottery proceeds at the time they were transferred to Ms. Fordu pursuant to the Separation Agreement. As we explain below, the lottery proceeds unquestionably constituted marital property in which the Debtor had an interest at the time of the dissolution.
 

 Ohio Rev.Code Ann. § 3105.171, which became effective January 1, 1991, contains definitions of the terms “marital property” and “separate property.” Under this statute, property acquired during marriage is deemed to be marital property
 
 [11]
 
 and subject to division upon termination of the marriage unless such property falls within one of the specific categories of separate property enumerated in Ohio Rev.Code Ann. § 3105.171(A)(6)(a).
 
 [12]
 
 Because the lottery proceeds were won during the For-dus’ marriage and do not come within the
 
 *702
 
 ambit of any of the separate property exceptions set forth in Ohio Rev.Code Ann. § 3105.171(A)(6)(a), the proceeds were a part of the Fordus’ marital estate at the time of the dissolution.
 
 [13]
 
 Ohio courts, applying the foregoing definitions of marital and separate property, consistently have determined that lottery proceeds won during marriage constitute marital rather than separate property.
 
 See Leis v. Leis,
 
 96-CA-20, 1997 WL 335145, at *3 (Ohio Ct.App. June 20, 1997) (holding that spouse had interest in lottery proceeds even though not the official winning claimant because the lottery winnings constituted marital property);
 
 Burden v. Burden,
 
 No. 2-86-20, 1987 WL 18222, at *1 (Ohio Ct.App. Oct. 7, 1987) (same);
 
 Frasier v. Frasier,
 
 No. 1538, 1981 WL 6545, at *2 (Ohio Ct.App. Dec. 4,1981) (same).
 

 In sum, we conclude that the lottery proceeds were part of the Fordus’ marital estate and the Debtor thus held a property interest in such proceeds that was transferred to Ms. Fordu under the Separation Agreement. This transfer was properly subject to challenge by the Trustee through the assertion of his avoidance claims.
 
 See Ernsberger v. Ernsberger,
 
 No. 2351, 1988 WL 107012, at *2 (Ohio Ct.App. Oct. 12, 1988) (transfer made pursuant to divorce decree may be challenged as a fraudulent transfer). We therefore conclude that the BAP correctly reversed the bankruptcy court’s order granting Ms. Fordu partial summary judgment.
 

 III.
 

 Ms. Fordu argues that the BAP erred in reversing the bankruptcy court’s dismissal of the Trustee’s causes of action based on the principle of collateral estoppel. Specifically, the bankruptcy court concluded that: (1) the Trustee and the Debtor were in privity in the dissolution proceeding; (2) the issue of whether the Debtor received reasonably equivalent value in exchange for the transfer of his interest in the lottery proceeds had been determined by the Domestic Relations Court’s Dissolution Decree, which recited that the parties’ Separation Agreement was fair, just and equitable; and (3) principles of collateral estoppel barred relitigation of the reasonably equivalent value issue. These conclusions by the bankruptcy court were erroneous. We therefore hold, as did the BAP, that preclusion principles do not bar the Trustee’s fraudulent transfer and preference claims.
 

 “A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a ‘right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies....’”
 
 Montana v. United States, 440
 
 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (quoting
 
 Southern Pac. R.R. Co. v. United States,
 
 168 U.S. 1, 48-49, 18 S.Ct. 18, 42 L.Ed. 355 (1897)) (alterations in original). In
 
 Migra v. Warren City School District Board of Education,
 
 
 *703
 
 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56. (1984), the United States Supreme Court expressed its preference for the use of the terms “issue preclusion” and “claim preclusion” to refer to the preclu-sive effect of a judgment in foreclosing future litigation rather than the more traditionally utilized terms “collateral estop-pel” and “res judicata.” “Claim preclusion generally refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.”
 
 Migra,
 
 465 U.S. at 77 n. 1, 104 S.Ct. 892. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided.
 
 Id.
 
 This effect also is referred to as direct or collateral estoppel.
 
 [14]
 

 Id.
 
 Both issue and claim preclusion serve the necessary function of conserving judicial and litigant resources and minimize the possibility of inconsistent decisions.
 
 See Montana v. United States,
 
 440 U.S. at 153-54, 99 S.Ct. 970.
 

 The full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court.
 
 [15]
 

 See Marrese v. American Academy of Orthopaedic Surgeons,
 
 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action.
 
 See
 
 28 U.S.C. § 1738;
 
 Migra,
 
 465 U.S. at 81, 104 S.Ct. 892;
 
 Bay Area Factors v. Calvert (In re Calvert),
 
 105 F.3d 315, 317 (6th Cir.1997);
 
 Hospital Underwriting Group, Inc. v. Summit Health Ltd.,
 
 63 F.3d 486, 494-95 (6th Cir.1995). We thus look to Ohio preclusion principles to determine the effect of the Dissolution Decree.
 
 See Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 918 F.2d 658, 661 (6th Cir.1990).
 

 In
 
 Grava v. Parkman Township,
 
 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (1995), the Ohio Supreme Court applied the principle of claim preclusion, holding that “a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.” The court explained:
 

 “When a valid and final judgment rendered in an action extinguishes the plaintiffs claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of transactions, out of which the action arose.”
 

 Id.
 
 (quoting
 
 Restatement (Second) of Judgments
 
 § 24(1) (1982)) (alteration in original). The doctrine of claim preclusion encompasses “all claims which were or might have been litigated in the first lawsuit.”
 
 Stuhlreyer v. Armco, Inc.,
 
 12 F.3d 75, 77 (6th Cir.1993) (citing
 
 National Amusements, Inc. v. Springdale,
 
 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180 (1990),
 
 cert. denied,
 
 498 U.S. 1120, 111 S.Ct. 1075, 112 L.Ed.2d 1180 (1991)).
 

 Claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of compe
 
 *704
 
 tent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.
 
 Hapgood v. City of Warren,
 
 127 F.3d 490, 493 (6th Cir.1997) (citing
 
 Felder v. Community Mut. Ins. Co.,
 
 No. 96-3320, 1997 WL 160373, at *3-*4 (6th Cir. Apr. 4, 1997) (unpublished)). Under Ohio law, claim-preclusive effect may be granted to a dissolution decree.
 
 See Gilbraith v. Hixson (In re Gilbraith),
 
 32 Ohio St.3d 127, 129, 512 N.E.2d 956, 959 (1987).
 

 “Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action.”
 
 MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.,
 
 80 Ohio St.3d 212, 217, 685 N.E.2d 529, 533 (1997) (citation and internal quotations omitted). Issue preclusion applies when a fact or issue “(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.”
 
 Thompson v. Wing,
 
 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994).
 

 The bankruptcy court relied on the principle of collateral
 
 estoppel
 
 — i.e., issue preclusion — in holding that the Dissolution Decree barred litigation of the Trustee’s preference and fraudulent transfer claims. Because issue preclusion applies only when a fact or issue has been actually and necessarily litigated in a prior action,
 
 see MetroHealth Med. Ctr.,
 
 80 Ohio St.3d at 217, 685 N.E.2d at 533, the bankruptcy court’s dismissal of the Trustee’s claims based on issue preclusion principles was erroneous. Although the issue of the fairness of the property division between the Debtor and Ms. Fordu was the subject of a recitation contained in the Dissolution Decree, it was not actually litigated in the dissolution proceeding. Absent a judgment following actual litigation, the Dissolution Decree cannot be accorded issue-preclusive effect.
 
 See Gargallo,
 
 918 F.2d at 663 n. 6 (“[B]ecause ... no substantive factual issues were adjudicated in the Ohio court, Ohio’s issue preclusion principles are not relevant to this case.”).
 

 Because the bankruptcy court’s dismissal of the Trustee’s claims was based on issue, rather than claim, preclusion principles, it was not necessary for the BAP to reach the issue of the claim-preclu-sive effect of the Dissolution Decree. The BAP simply could have reversed the bankruptcy court’s dismissal of the Trustee’s claims on the ground that, because the parties did not actually litigate the question of the fairness of the property division in the Domestic Relations Court, the Dissolution Decree should not have been accorded issue-preclusive effect in the adversary proceeding. We recognize, however that considerable confusion has resulted from the “seemingly conflicting terminology ... attributable to the evolution of preclusion concepts over the years.”
 
 Migra,
 
 465 U.S. at 77 n. 1, 104 S.Ct. 892. Under the assumption that the bankruptcy court may have fallen prey to this confusion and used the term collateral estoppel when, in fact, it intended to apply res judicata, or claim preclusion, principles, we will analyze whether the Dissolution Decree was entitled to claim-preclusive effect.
 

 Under Ohio law, a necessary prerequisite to application of the principle of claim preclusion is an identity of parties or their privies.
 
 See Hapgood,
 
 127 F.3d at 493;
 
 Grava,
 
 73 Ohio St.3d at 381, 653 N.E.2d at 228. Although he was not a party to the Domestic Relations Court proceeding, the Trustee would be bound by the Dissolution Decree if found to be in privity with the Debtor.
 
 See Ameigh v. Baycliffs Corp.,
 
 81 Ohio St.3d 247, 249, 690 N.E.2d 872, 874 (1998) (“[I]n order for res judicata
 
 [ie.,
 
 claim preclusion] to apply, a valid, final judgment must have been ren
 
 *705
 
 dered upon the merits and an identity of parties or their privies must exist.”) (citing
 
 Whitehead v. General Tel. Co.,
 
 20 Ohio St.2d 108, 254 N.E.2d 10 (1969),
 
 overruled in part on other grounds by Grava v. Parkman Township,
 
 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (1995));
 
 Hapgood,
 
 127 F.3d at 493 (same).
 

 The bankruptcy court determined that the Trustee and the Debtor stood in privity. On this basis, the court held that the Trustee was bound by the Dissolution Decree’s recitation that the property division effected by the Separation Agreement was fair, just and equitable. The court therefore dismissed the Trustee’s avoidance claims, concluding that the principle of collateral estoppel barred relitigation of the issue of whether the Debtor received reasonably equivalent value in exchange for the transfers effected by the Separation Agreement. For the reasons explained below, this conclusion was erroneous.
 

 Ohio courts, in determining whether privity between parties exists, “ ‘look behind the nominal parties to the substance of the cause to determine the real parties in interest.’ ”
 
 Fort Frye Teachers Ass’n v. State Employment Relations Bd.,
 
 81 Ohio St.3d 392, 396, 692 N.E.2d 140, 144 (1998) (quoting
 
 Trautwein v. Sorgenfrei,
 
 58 Ohio St.2d 493, 501, 391 N.E.2d 326, 331 (1979)). “For purposes of res judicata [claim preclusion], a person is in privity with another if he is so identified in interest with such person that he represents the same legal right.”
 
 Deaton v. Burney,
 
 107 Ohio App.3d 407, 413, 669 N.E.2d 1, 5 (1995) (citing
 
 Fightmaster v. Tauber,
 
 43 Ohio App. 266, 268, 183 N.E. 116, 117 (1932));
 
 see also Thompson,
 
 70 Ohio St.3d at 184, 637 N.E.2d at 923 (“As a general matter, privity ‘is merely a word used to say that a relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.’ ”) (quoting
 
 Bruszewski v. United States,
 
 181 F.2d 419, 423 (3rd Cir.1950) (Goodrich, J., concurring)).
 

 Application of the privity principles distilled from Ohio ease law leads to the inescapable conclusion that the Trustee was not in privity with the Debtor in the dissolution proceeding. A bankruptcy trustee is the representative of all creditors of the bankruptcy estate.
 
 See Marlow v. Rollins Cotton Co. (In re The Julien Co.),
 
 146 F.3d 420, 423 (6th Cir.1998) (“[T]he trustee in bankruptcy ... represents all creditors ....”) (quoting
 
 Wells v. Dickinson,
 
 403 F.2d 635, 636 (6th Cir.1968));
 
 Bauer v. Commerce Union Bank,
 
 859 F.2d 438, 441 (6th Cir.1988) (“It is ... clear that the trustee in bankruptcy acts as representative of the estate.”). As such, the Trustee is not simply the successor-in-interest to the Debtor: he represents the interest of all creditors of the Debtor’s bankruptcy estate.
 

 Plainly, the Debtor’s creditors were not the “ ‘real parties in interest’ ” in the dissolution proceeding.
 
 [16]
 

 Fort Frye Teachers Ass’n,
 
 81 Ohio St.3d at 396, 692 N.E.2d at 144 (citation omitted). Nor was the Debtor “so identified in interest with [the creditors of his bankruptcy estate] that he represented their] same legal right.”
 
 Deaton,
 
 107 Ohio App.3d at 413, 669 N.E.2d at 5. Thus, the Trustee was not in privity with the Debtor in the dissolu
 
 *706
 
 tion proceeding.
 
 [17]
 

 See Dionne v. Keating (In re XYZ Options, Inc.),
 
 154 F.3d 1262, 1269 (11th Cir.1998) (“Trustee [is not in privity with debtor because he] represents the rights of the [debtor’s] creditors... who were not parties to the ... consent judgment and whose interests were not represented by [the debtor].... ”);
 
 Coleman v. Alcock,
 
 272 F.2d 618, 621-22 (5th Cir.1959) (Because the trustee is invested with “extraordinary rights ... as a general representative of ... creditors,” he is “not bound, either on res judicata or judicial collateral estoppel [grounds] by the prior state proceedings.”);
 
 Webster v. Hope (In re Hope),
 
 231 B.R. 403, 422-23 (Bankr.D.Dist.Col.1999) (“[T]here is no privity between the trustee in suing under § 548(a)(2) and the debtor as a party in the prior divorce proceeding which was resolved consensually.”);
 
 Germain v. Colorado State Univ. (Matter of Windrush Associates II),
 
 105 B.R. 195, 197 (Bankr.D.Conn.1989) (because “[creditors of the debtors ... were not necessary parties” to state court action, trustee held “not [to] be in privity with the debtor”);
 
 Stainer v. McCall (In re Nevada Natural, Inc.),
 
 92 B.R. 934, 937 (Bankr.N.D.Okla.1988) (Trustee, “who represents the interests of all creditors of the bankrupt estates[,]” was not in privity with the debtor since “rights and interests of the creditors ... were not represented” in prior action.);
 
 Gray v. Fill (In re Fill),
 
 82 B.R. 200, 217 (Bankr.S.D.N.Y.1987) (Trustee held not to stand in privity with the debtor, “[f]or it is plain that the rights of creditors are not considered in the pre-bankruptcy suit.”);
 
 Boyajian v. DeFusco (In re Giorgio),
 
 62 B.R. 853, 863 (Bankr.D.R.I.1986) (“ ‘Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein. Thus, they cannot be bound by the dismissal of the action.’”) (citation omitted).
 
 [18]
 

 
 *707
 
 The bankruptcy court, in determining that the Dissolution Decree was entitled to preclusive effect, relied on two decisions cited by Ms. Fordu in her brief:
 
 Falk v. Hecker (In re Falk), 98
 
 B.R. 472 (D.Minn.1989) and
 
 Hoyt v. Hoyt (In re Hoyt),
 
 97 B.R. 730 (Bankr.D.Conn.1989).
 
 Falk
 
 and
 
 Hoyt
 
 hold that a state court’s approval of an agreed property division as fair and equitable in a domestic relations proceeding is tantamount to a determination by the court that the transfers made by the parties were supported by reasonably equivalent value. Accordingly, the
 
 Falk
 
 and
 
 Hoyt
 
 courts granted preclusive effect to the state court orders in subsequent fraudulent transfer litigation.
 
 See Falk,
 
 98 B.R. at 474 (“The measure of reasonably equivalent value is the same measure called for in a fair and equitable [property] division_”);
 
 Hoyt,
 
 97 B.R. at 733 (“[U]nder the division of property scenario, the state court found that the value of releasing the plaintiff from the mortgage and loan obligations was reasonably equivalent to the transfer of whatever property interest he held in the real estate and the trust.”). As we explain below, the standards for measuring the fairness of a property division in the domestic relations arena and reasonably equivalent value in a fraudulent transfer case are separate and distinct. We thus do not equate the Domestic Relations Court’s approval of the Dissolution Decree with a determination by the court that the transfers made in connection with the parties’ property division were supported by reasonably equivalent value.
 

 A fundamental element of a constructive fraudulent transfer claim is a transfer made in exchange for less than reasonably equivalent value.
 
 See
 
 Ohio Rev.Code Ann. §§ 1336.04(A)(2) and 1336.05(A). In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer.
 
 See, e.g., Aristocrat Lakewood Nursing Home v. Mayne,
 
 No. 73328, 1999 WL 285386, at *8 (Ohio Ct.App. May 6, 1999) (where transferor “gave up a certain asset of $7,500” in return for “a highly contingent potential opportunity to rent a home” from the transferee, “record does not show that [transferor’s] benefit was ‘reasonably equivalent’ to the value [he] surrendered.... ”);
 
 Deitering v. Amann,
 
 No. 12864, 1992 WL 127654, at *2 (Ohio Ct.App. June 11, 1992) (measuring value of property transferred and comparing it to value received by transferor);
 
 see also Barber v. Golden Seed Co., Inc.,
 
 129 F.3d 382, 387 (7th Cir.1997) (“The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and compare it to what was received.”) (citing
 
 Matter of Vitreous Steel Prod. Co.,
 
 911 F.2d 1223, 1234-35 (7th Cir.1990));
 
 Harman v. First American Bank (In re Jeffrey Bigelow Design Group, Inc.),
 
 956 F.2d 479, 484 (4th Cir.1992) (“[P]roper focus is on the net effect of the transfers on the debtor’s estate .... ”).
 

 Ohio domestic relations courts, in making an equitable division of property in a
 
 *708
 
 divorce proceeding, apply a markedly different standard than the reasonably-equivalent-value test. All the following factors must be considered by a domestic relations court when a division of marital property is made:
 

 (1) The duration of the marriage;
 

 (2) The assets and liabilities of the spouses;
 

 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 

 (4) The liquidity of the property to be distributed;
 

 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 

 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 

 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 

 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 

 (9) Any other factor that the court expressly finds to be relevant and equitable.
 

 Ohio Rev.Code Ann. § 3105.171(F) (Anderson 1996).
 

 Thus, the test used to determine whether a transfer was supported by reasonably equivalent value focuses on whether there is a reasonable equivalence between the value of property surrendered and that which was received in exchange. Ohio domestic relations courts, in making a division of property, are not constrained by a reasonable equivalence standard. Rather, they may take into account a number of equitable factors that conceivably could produce a division of marital property that would satisfy the requirements of Ohio Rev.Code Ann. § 3105.171(F), yet not pass muster under the reasonable equivalence test. Given these divergent decisional standards, we believe that the Dissolution Decree cannot be accorded claim-preclu-sive effect.
 
 Raleigh v. Haskell (In re Haskell),
 
 No. 96B14602, 1998 WL 809520, at *8 (Bankr.N.D.Ill. Nov. 19, 1998) (declining to grant preclusive effect to agreed divorce decree in fraudulent transfer action because the “factors outlined in the Illinois statute are used to make a determination of a just distribution and are different from those used in [a] reasonably equivalent value determination”);
 
 Blackwell v. Wallace (In re Wallace),
 
 66 B.R. 834, 843 (Bankr.E.D.Mo.1986) (“[I]n view of the evidence before it, it is not surprising that [transferee] received a substantial portion of the marital property, and in that respect the court’s disposition appears ‘just’ and ‘fair’, [sic] Nevertheless, the Bankruptcy Code requires the disposition to be measured by different standards.”).
 

 Falk
 
 and
 
 Hoyt
 
 also are clearly factually distinguishable from the present situation. In each of those cases, it was the individual debtor (the Chapter 11 debtor in
 
 Falk
 
 and the Chapter 13 debtor in
 
 Hoyt)
 
 who actually had participated in the domestic relations proceedings, rather than a court-appointed trustee, who sought to set aside the earlier property division. See
 
 Falk,
 
 98 B.R. at 473;
 
 Hoyt,
 
 97 B.R. at 734. Under those circumstances, the equities weighed strongly against permitting the same individual who had negotiated the state court-approved property division to attempt to set aside the agreement wearing the mantle of a fiduciary at a later date.
 

 Further,
 
 Falk
 
 and
 
 Hoyt
 
 rely on the rationale of
 
 Harman v. Sorlucco (In re Sorlucco),
 
 68 B.R. 748, 752 (Bankr.D.N.H.1986), wherein the bankruptcy court established the following standard to be applied when a property division approved by a state court is subsequently challenged as a constructive fraudulent transfer:
 

 It must be shown that the property division was the result of arms-length bargaining in the light of the likely range of distribution that the divorce court might
 
 *709
 
 order if the matter went to a contested trial. Settlements reached in the shadow of an imminent bankruptcy filing would raise a clear factual question as to the bona fides of such bargaining.
 

 Id.
 
 at 755. According to the
 
 Sorlucco
 
 court, only property divisions falling outside this “likely range of distribution” are subject to constructive fraudulent transfer attack.
 
 Id.
 
 In our view,
 
 Sorlucco
 
 is a policy-based decision that usurps the legislative prerogative. For if the Ohio legislature had seen fit to exempt court-approved property divisions from challenge as constructive fraudulent transfers, it could have expressly done so. Even if we were to follow the holding of
 
 Sorlucco,
 
 which we are not inclined to do, the Fordus’ property division would not satisfy the
 
 Sorlucco
 
 standard. Certainly, the Debtor’s transfer of his interest in the marital residence and a future stream of lottery proceeds valued at approximately $880,000 in return for Ms. Fordu’s waiver of alimony and her interest in the Debtor’s fledgling restaurant business does not appear to be a property division falling within “the likely range of distribution that [a] divorce court may order if the matter went to a contested trial.”
 
 Id.
 

 [19]
 

 Another fundamental requirement of claim preclusion is that the second action raises claims that were or could have been litigated in the first action.
 
 See Hap-good,
 
 127 F.3d at 493. Here, it is readily apparent that the Trustee’s actual fraudulent transfer claims could not have been litigated in the Domestic Relations Court proceeding. The Trustee’s complaint alleged that the Debtor transferred his interest in the lottery proceeds with intent to hinder, delay and/or defraud his creditors. If, as the Trustee alleges, the Debt-
 
 *710
 
 or executed the Separation Agreement as part of a scheme to hinder, delay or defraud his creditors, then, as a willing participant in this scheme, the Debtor certainly would not have acted to protect the interest of those same creditors in the dissolution proceeding. Accordingly, there clearly was not an opportunity to litigate the intentional fraudulent transfer claims in the Domestic Relations Court.
 
 See XYZ Options,
 
 154 F.3d at 1269 (consent judgment not entitled to preclusive effect “where [it] was obtained as part of a collusive scheme on the part of [the debtor and its transferee] to hinder, delay, or defraud creditors”);
 
 In re Hope,
 
 231 B.R. at 422 (“A bankruptcy trustee is not bound by a judgment to which he was not a party ... if the judgment was a collusive effort to hinder, delay or defraud creditors.”).
 

 For the foregoing reasons, we conclude that the Dissolution Decree was not entitled to claim-preclusive effect. The bankruptcy court’s dismissal of the Trustee’s avoidance claims based on preclusion principles therefore was erroneous.
 

 IY.
 

 The bankruptcy court dismissed the Trustee’s third and fourth causes of action without making findings of fact or conclusions of law. Fed R. Civ. P. 52(a), which is made applicable in the adversary proceeding by Fed. R. Bankr.P. 7052, states that “[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law....”
 
 See Orlett v. Cincinnati Microwave, Inc.,
 
 954 F.2d 414, 418 (6th Cir.1992) (quoting Fed. R. Civ. P. 52(a)). We have not interpreted Fed. R.Civ.P. 52 to require trial courts to explicitly treat each issue raised.
 
 See Grover Hill Grain Co. v. Baughman-Oster, Inc.,
 
 728 F.2d 784, 792-93 (6th Cir.1984). Rather, findings are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired.
 
 Id.
 
 at 793. “However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated.”
 
 Orlett,
 
 954 F.2d at 418. And there must be sufficient findings of fact and conclusions of law to give an appellate court a clear understanding of the basis of the trial court’s decision and enable it to determine the grounds on which the trial court reached its decision.
 
 See id.
 
 Because the bankruptcy court failed to make findings of fact specific to the Trustee’s third and fourth causes of action, we AFFIRM the BAP’s reversal of the judgment dismissing these claims and agree that the adversary proceeding should be remanded to the bankruptcy court for further findings.
 

 Y.
 

 Ms. Fordu also appeals the bankruptcy court’s denial of her “Motion for Allowance of Bill of Costs and Attorney’s Fees” pursuant to Fed. R. Bankr. P. 9011(a)
 
 [20]
 
 and
 
 *711
 
 7054(b).
 
 [21]
 
 Bankruptcy courts’ decisions regarding the imposition of sanctions are reviewed under an abuse of discretion standard.
 
 Downs,
 
 103 F.3d at 478. Therefore, we will not disturb a lower court’s findings with respect to sanctions unless a clear abuse of discretion is found.
 
 See id.
 

 Here, there was no abuse of discretion by the bankruptcy court. With respect to Ms. Fordu’s claim under Fed. R. Bankr.P. 7054(b), there is no evidence, as the bankruptcy court noted, that the Trustee acted other than in good faith in asserting a claim against her. Accordingly, an award of costs would not be warranted under that provision. With respect to her claim under Fed. R. Bankr.P. 9011(a), sanctions under this provision appropriately may be awarded when an attorney advances an argument that is “not well grounded in fact or warranted by existing law or a good faith argument for the extension or modification ... or reversal of existing law.”
 
 Downs,
 
 103 F.3d at 481. The test for imposing sanctions is whether the individual’s conduct was reasonable under the circumstances.
 
 Id.
 

 In this case, the bankruptcy court concluded that the Trustee’s conduct was reasonable under the circumstances. First, the Trustee made reasonable inquiry into the facts of the case before filing the complaint. Second, and most important, the Trustee’s claim that the lottery proceeds were indeed marital property is supported by existing law. Considering these facts, we cannot conclude that the bankruptcy court abused its discretion by finding that sanctions were unwarranted. We therefore affirm the bankruptcy court’s denial of Ms. Fordu’s motion for attorney fees and costs.
 

 YI.
 

 For the foregoing reasons, we REVERSE the bankruptcy court’s “Order Granting Motion for Summary Judgment” and the judgment entry dismissing the Trustee’s complaint. The bankruptcy court’s order denying Ms. Fordu’s motion of allowance of bill of costs and attorney fees 'is AFFIRMED. We REMAND this case to the bankruptcy court for further proceedings consistent with this opinion.
 

 [1]
 

 . Whether an appeal comes to our court by way of a district court or the BAP, our review is of the bankruptcy court's decision.
 
 See Hardin v. Caldwell (In re Caldwell),
 
 851 F.2d 852, 857 (6th Cir.1988);
 
 Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),
 
 132 F.3d 104, 107 (1st Cir.1997);
 
 Havelock v. Taxel (In re Pace),
 
 67 F.3d 187, 191 (9th Cir.1995). As always, we review de novo the bankruptcy court’s conclusions of law, while we review for clear error its factual findings.
 
 Rembert v. AT & T Universal Card Services Inc. (In re Rembert),
 
 141 F.3d 277, 280 (6th Cir.1998),
 
 cert. denied,
 
 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). We review the bankruptcy court's denial of attorney fees under Fed. R. Bankr.P. 9011 and costs under Fed. R. Bankr.P. 7054(b) for an abuse of discretion.
 
 See Mapother & Mapother, P.S.C. v. Cooper (In re Downs),
 
 103 F.3d 472, 480 (6th Cir.1996).
 

 [2]
 

 . Section 544, which permits a trustee to avoid transfers under applicable law, provides in pertinent part:
 

 [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
 

 11 U.S.C. § 544(b)(1).
 

 [3]
 

 . "[T]he section 544 strong-arm' provision of the Code allows the trustee to 'step into the shoes’ of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for' the benefit of all creditors.”
 
 NLRB v. Martin Arsham Sewing Co.,
 
 873 F.2d 884, 887 (6th Cir.1989),
 
 modified on reh’g on other grounds,
 
 882 F.2d 216 (6th Cir.1989).
 
 See also Craig v. Seymour (In re Crabtree),
 
 871 F.2d 36, 37 (6th Cir.1989) (“Section 544(a) gives a bankruptcy trustee the rights and powers of a judicial lien creditor or a bona fide purchaser of real property and allows the trustee to avoid any transfer of property of the debtor or any obligation incurred by the debt- or that is voidable by a judicial lien creditor or a bona fide purchaser of real property.”).
 

 [4]
 

 .The Trustee’s complaint asserted that the transfers of the Debtor’s interest in the lottery proceeds and marital residence that were made pursuant to the Separation Agreement constituted fraudulent and preferential transfers. The challenged transfers were made
 
 *698
 
 nearly two years before the Debtor's bankruptcy filing. The Bankruptcy Code's preference provision — 11 U.S.C. § 547(b) — applies only to transfers made on or within ninety days before the date of the filing of a bankruptcy petition, or to transfers made within one year of the petition date in the case of transfers to an insider.
 
 See
 
 11 U.S.C. § 547(b)(4). Section 548 of the Bankruptcy Code, the federal fraudulent transfer statute, applies only to transfers made within one year before the bankruptcy filing.
 
 See
 
 11 U.S.C. § 548(a). Because neither § 547 nor § 548 would apply to transfers made more than one year before a bankruptcy filing, the Trustee could obtain relief solely under the Ohio preference (Ohio Rev.Code Ann. §§ 1313.56 and 1313.57) and/or fraudulent transfer (Ohio Rev.Code Ann. §§ 1336.04 and 1336.05) statutes.
 

 [5]
 

 . Section 1336.04 provides:
 

 (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 

 (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 

 (2) Without receiving a reasonably equiv-. alent value in exchange for the transfer or obligation, and if either of the following applies:
 

 (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 

 (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
 

 Ohio Rev.Code Ann. § 1336.04 (Anderson 1993).
 

 [6]
 

 . Section 1336.05 states:
 

 (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 

 (B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
 

 Ohio Rev.Code Ann. § 1336.05 (Anderson 1993).
 

 [7]
 

 . Section 1313.56 provides:
 

 A sale, conveyance, transfer, mortgage, or assignment, made in trust or otherwise by a debtor, and every judgment suffered by him against himself in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage, or assignment made, or judgment procured by him to be rendered, in any manner, with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor. In a suit brought by a creditor of such debtor for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all assets of such debt- or, including the property so sold, conveyed, transferred, mortgaged, or assigned, and also administer all the assets of the debtor for the equal benefit of the creditors of the debtor in proportion to the amount of their respective demands, including those which are unmatured.
 

 Ohio Rev.Code Ann. § 1313.56 (Anderson 1993).
 

 [8]
 

 . Section 1313.57 states:
 

 Section 1313.56 of the Revised Code does not apply unless the person to whom such sale, conveyance, transfer, mortgage, or assignment is made, knew of such fraudulent intent on the part of such debtor. Said section does not vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if such mortgage is filed for record in the county wherein the property is situated, or as otherwise provided by law, within three days after its execution, and when, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds thereof.
 

 Ohio Rev.Code Ann. § 1313.57 (Anderson 1993).
 

 [9]
 

 . It is unclear from the record why the bankruptcy court deemed it necessary to enter a second order concerning the lottery proceeds after concluding as a matter of law that the Debtor had no property interest in the proceeds as of the date the Dissolution Decree was entered. The transfer of an interest in property is a necessary threshold element of both a fraudulent transfer and a preference claim.
 
 See
 
 Ohio Rev.Code Ann. §§ 1313.56, 1336.04(A), and 1336.05(A) and (B). A "transfer” is defined in Ohio Rev.Code Ann. § 1336.01(L) as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.” Ohio Rev.Code Ann. § 1336.01(L) (Anderson 1993). A finding that, at the time of the dissolution proceeding, the Debtor had no interest in the lottery proceeds to transfer should have been outcome determinative of the Trustee's avoidance claims. Thus, the second ruling addressing the preclusive effect of the Dissolution Decree appears to have been unnecessary, at least insofar as the lottery proceeds were concerned.
 

 [10]
 

 . The Trustee's complaint seeks the avoidance and recovery of the transfers of the Debtor’s interest in both the marital residence and the lottery proceeds. Neither the Trustee nor Ms. Fordu addressed the marital residence in the proceedings before the bankruptcy court, the BAP, or in this appeal. While our decision applies equally to the marital residence, because the parties chose in their briefs and oral argument to ignore the marital residence, this opinion focuses solely on the lottery proceeds.
 

 [11]
 

 . Ohio Rev.Code Ann. § 3105.171(A)(3) provides:
 

 (a) "Marital property” means, subject to division (A)(3)(b) of this section, all of the following:
 

 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 

 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 

 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 

 (iv) A participant account, as defined in section 145.71 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 145.74 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.
 

 (b) "Marital property” does not include any separate property.
 

 Ohio Rev.Code Ann. § 3105.171(A)(3) (Anderson 1996).
 

 [12]
 

 . Under Ohio law, “separate property” means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 

 (a)(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 

 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 

 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 

 (iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
 

 (v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 

 (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 

 (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 

 (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
 

 
 *702
 
 Ohio Rev.Code Ann. § 3105.171(A)(6) (Anderson 1996).
 

 [13]
 

 . The Fordus' dissolution action was filed in 1990, prior to the effective date of Ohio Rev. Code Ann. § 3105.171. Section 3105.171 was not made applicable to cases pending on the statute’s January 1, 1991, effective date.
 
 See Lyon v. Lyon,
 
 86 Ohio App.3d 580, 621 N.E.2d 718 (1993). However, § 3105.171 simply codified existing Ohio case law. Thus, the definitions of marital property and separate property incorporated into § 3105.171 essentially mirror the controlling Ohio deci-sional law at the time that the Debtor and Ms. Fordu dissolved their marriage.
 
 See, e.g., Moro v. Moro,
 
 68 Ohio App.3d 630, 636, 589 N.E.2d 416, 420 (1990) ("In general, marital property is presumed to include all property acquired during the marriage or those assets produced or earned as a result of the parties’ mutual efforts. This presumption may be overcome, however, by proof that the property was acquired before the marriage, or by gift, bequest, devise or descent.”) (quoting
 
 Avis v. Avis,
 
 No. 48832, 1985 WL 9027, at *6 (Ohio Ct.App. May 23, 1985));
 
 see also Wolfe v. Wolfe,
 
 46 Ohio St.2d 399, 412-14 n. 27, 350 N.E.2d 413, 422-23 n. 27 (1976).
 

 [14]
 

 . “Direct estoppel” is sometimes used to refer to issue preclusion in a second action on the same claim.
 
 See Restatement (Second) of Judgments
 
 § 27 cmt b. "Collateral estoppel" is sometimes used to refer to issue preclusion in a second action brought on a
 
 different
 
 claim.
 
 Id.
 

 [15]
 

 . Section 1738 provides in pertinent part:
 

 The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.
 

 28 U.S.C. § 1738.
 

 [16]
 

 . In
 
 White v. White (In re White),
 
 851 F.2d 170 (6th Cir.1988), we recognized that the trustee's interest as a creditor's representative is not adequately represented in a divorce or dissolution proceeding and, therefore, suggested that lower courts urge trustees and creditors to appear in divorce proceedings to alert the court that their interests might be affected by any property division.
 
 Id.
 
 at 174. Of course, the situation in
 
 White
 
 may be distinguished from the one here in that the divorce proceeding in
 
 White
 
 was contemporaneous with the bankruptcy proceeding so it was feasible for a trustee to appear in that case. Nevertheless, our observation that the interests of creditors generally are not represented in the divorce proceeding would be equally applicable in the present case, in which the dissolution proceeding predated the bankruptcy case by several years.
 

 [17]
 

 . In analyzing whether privity existed between the Debtor and the Trustee, the BAP applied the test adopted by the Ninth Circuit Bankruptcy Appellate Panel in
 
 Shuman v. McDonald (In re Shuman),
 
 78 B.R. 254, 256 (9th Cir. BAP 1987). In
 
 Shuman,
 
 the panel held that for privity to exist it must be shown that the interests of the debtor and the trustee were so closely related that "the [debtor] was [the trustee's] 'virtual representative’ in the prior action.”
 
 Id.
 
 (citation and internal quotation omitted). Here, the BAP erroneously applied a standard derived from federal law in determining the existence of privity between the Trustee and the Debtor.
 
 Marrese v. American Academy of Orthopaedic Surgeons,
 
 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), teaches that a federal court must apply the law of the state where the prior judgment was rendered in determining the extent to which a prior judgment should be given preclusive effect.
 
 See Hospital Underwriting Group, Inc. v. Summit Health Ltd.,
 
 63 F.3d 486, 494-95 (6th Cir.1995). Because the existence of privity is a necessary prerequisite to the application of preclusion principles, the BAP should have applied Ohio, rather than federal, law in ascertaining whether the Trustee and the Debtor stood in privity in the dissolution proceeding. The various formulations of the privity test applied by Ohio courts are closely akin to the "virtual representative” standard employed by the Ninth Circuit BAP in
 
 Shuman. Compare Fort Frye Teachers Ass’n,
 
 81 Ohio St.3d at 396, 692 N.E.2d at 144 (adopting “real party in interest” privity test)
 
 and Deaton,
 
 107 Ohio App.3d at 413, 669 N.E.2d at 5 (holding that privity exists if "another ... is so identified in interest with [a party in first proceeding] ... that he represents the same legal right”)
 
 with Shuman,
 
 78 B.R. at 256 ("A person who technically is not a party to the prior action may be bound by the prior decision only 'if his interests are so similar to a party’s that the party was his 'virtual representative' in the prior action.’ ") (quoting
 
 A & A Concrete, Inc. v. White Mountain Apache Tribe,
 
 781 F.2d 1411 (9th Cir.1986)). Thus, the BAP’s application of a federal privity standard that is nearly identical to the privity test applied by Ohio courts was harmless error. Had the BAP applied the privity standards formulated by Ohio courts, the same legal conclusion was inevitable: the creditors of Debtor’s bankruptcy estate simply were not the " 'real parties in interest’ ” in the dissolution proceeding.
 
 Fort Frye Teachers Ass’n,
 
 81 Ohio St.3d at 396, 692 N.E.2d at 144 (citation omitted).
 

 [18]
 

 . Our holding does not suggest that a trustee may never be found to be in privity with the debtor. The duties and responsibilities of either a Chapter 11 trustee or debtor-in-possession as a fiduciary for the bankruptcy estate are virtually the same as those imposed on a
 
 *707
 
 Chapter 7 trustee.
 
 Compare
 
 11 U.S.C. § 704 with 11 U.S.C. §§ 1106(a) and 1107(a). Thus, it follows that after conversion of a bankruptcy case from a reorganization to a liquidation proceeding, a Chapter 7 trustee often will be held to have been in privity with his predecessor fiduciary,
 
 i.e.,
 
 either the debtor-in-possession or Chapter 11 trustee.
 
 See Sanders Confectionery Products v. Heller Financial, Inc.,
 
 973 F.2d 474, 480-81 (6th Cir.1992). Osh
 
 erow v. Buccino & Assocs., Inc. (In re Intelogic Trace, Inc.),
 
 No. 96-5222-C, 1998 Bankr.LEXIS 1647, at *7-* 11 (Bankr.W.D.Tex. May 21, 1998),
 
 aff'd,
 
 226 B.R. 382 (W.D.Tex.1998). Further, upon a factual showing that a pre-petition debtor adequately represented the interests of his/her creditors in a prior proceeding, the Chapter 7 trustee may be held to be in privity with the debtor and, thus, bound by the former adjudication.
 
 See Sanders,
 
 973 F.2d at 481 ("Privity ... means ... one whose interests were adequately represented [in the former proceeding].").
 

 [19]
 

 . The Supreme Court’s recent decision in
 
 BFP v. Resolution Trust Corp.,
 
 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), contains language that, upon first blush, seemingly would support the rule enunciated in
 
 Sor-lucco
 
 and applied by the
 
 Falk
 
 and
 
 Hoyt
 
 courts. In
 
 BFP,
 
 the Court held that absent evidence of collusion, the consideration received from a regularly conducted real estate mortgage foreclosure sale constitutes "reasonably equivalent value” for the foreclosed property within the meaning of 11 U.S.C. § 548(a)(2) (the Bankruptcy Code's constructive fraudulent transfer provision), provided that compliance with applicable state foreclosure law is demonstrated.
 
 See id.
 
 at 545-46, 114 S.Ct. 1757. One could argue that the
 
 BFP
 
 holding should be extended to the domestic relations area,
 
 i.e.,
 
 absent evidence of collusion, transfers made in accordance with a state court approved property division should be deemed to have been exchanged for reasonably equivalent value. This is essentially the rule formulated and applied by the
 
 Sorlucco
 
 court. Upon closer examination of
 
 BFP,
 
 however, it is clear that the decision does not require our adherence to the
 
 Sorluc-co
 
 rule. In the first place, the Supreme Court took pains to limit its decision to the real estate mortgage foreclosure context.
 
 See id.
 
 at 537, n. 3, 114 S.Ct. 1757 ("We emphasize that our opinion today covers only mortgage foreclosures of real estate.”). Second, the real estate mortgage foreclosure process is surrounded by procedural requirements (public notice and bidding) designed to ensure a market-driven result. These safeguards do not attend the dissolution process, which, consequently, is much more susceptible to the possibility of collusive property transfers. Finally, and perhaps most importantly, the
 
 BFP
 
 decision is based in part upon the principle of comity since, in
 
 BFP,
 
 a federal statute (§ 548(a)(2) of the Bankruptcy Code) was being invoked to attempt to unwind a state court-ordered foreclosure sale
 
 See id.
 
 at 544, 114 S.Ct. 1757 ("Federal statutes impinging upon important state interests ’cannot ... be construed without regard to the implications of our dual system of government ....’”) (quoting Felix Frankfurter,
 
 Some Reflections on the Reading of Statutes,
 
 47 Colum.L.Rev. 527, 539-40 (1947)) (alterations in original). Here, on the other hand, the Trustee relies on state statutes — Ohio Rev. Code Ann. §§ 1336.04(A), 1336.05, 1313.56 and 1313.57 — to challenge the transfers made pursuant to the Separation Agreement. Indeed, absent an intervening bankruptcy, the transfers made by way of the Separation Agreement could have been challenged by one or more of the Debtor’s individual creditors. Thus, the comity concerns expressed by the
 
 BFP
 
 court are simply not a compelling factor in the present case. Again, the Ohio legislature could have limited the reach of the constructive fraudulent transfer statutes so as to exempt property divisions approved by domestic relations courts from possible avoidance. We will not create a judicial exception to avoidability where the legislature has chosen not to do so.
 

 [20]
 

 . The version of Fed. R. Bankr.P. 9011(a) in effect at all relevant times to the adversary proceeding stated in pertinent part:
 

 (a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney’s individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party’s address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party’s knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called
 
 *711
 
 to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.
 

 [21]
 

 . Fed. R. Bankr.P. 7054(b) states:
 

 (b) Costs. The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, it officers and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day’s notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.