*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0178P (6th Cir.)
File Name: 02a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WILLIAM D. ZACK,
　　　*Petitioner-Appellant,*

　　　*v.*　　　　　　　　　　　　　No. 00-2375

COMMISSIONER OF INTERNAL
REVENUE,
　　　*Respondent-Appellee.*

On Appeal from the United States Tax Court.
No. 7825-94—David Laro, Tax Court Judge.

Submitted: May 3, 2002

Decided and Filed: May 21, 2002

Before: MERRITT, SUHRHEINRICH, and GILMAN,
Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Joseph Falcone, FALCONE & ROLFE,
Southfield, Michigan, for Appellant. Ann B. Durney,
Randolph L. Hutter, U.S. DEPARTMENT OF JUSTICE,
TAX DIVISION, Washington, D.C., for Appellee.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. William D. Zack challenges the determination made by the Commissioner of Internal Revenue that Zack is liable (1) for income tax deficiencies for the tax years 1985 and 1986 based upon unreported income, and (2) for additions to tax for fraud and substantial understatement of tax with regard to the deficiencies for those years. Although Zack does not contend that his income tax returns for 1985 and 1986 were accurate, he argues that the amount of his unreported income was substantially offset by the bribes that he had paid to third parties in order to obtain work for his business entities. Following a two-day trial, the tax court concluded that Zack was entitled to reduce his total unreported income of $311,601 by the $90,286 that he was found to have paid in bribes during the years in question. The tax court also upheld the Commissioner's determination that Zack was liable for additions to tax for 1985 and 1986 on account of fraud and substantial understatement of tax. For the reasons set forth below, we **AFFIRM** the judgment of the tax court.

## I.  BACKGROUND

### A.  Factual background

Zack and his business partner, Lester J. Sova, began operating a tool and die business called Zachova Tool & Die, Inc. (ZTD) in 1976. They formed Zachova Industries, Inc. (ZI) in 1980 to accommodate the overflow work from ZTD. Zack and Sova each owned 50 percent of the corporate stock of ZTD and ZI (the Zachova entities), and they served as president and vice-president, respectively, of these corporations.

In the mid-1980s, Zack and Sova formed four additional businesses: Sovack Partnership (Sovack), Colt Tool & Die, Inc. (Colt), Synchronized Design & Development, Inc.

deficiency for 1985 and 1986. *Kollsman Instrument Corp. v. Comm'r*, 870 F.2d 89, 92 (2d Cir. 1989) ("A net operating loss in a subsequent tax year may carry back to the tax year in question and directly affect the amount of tax owed for that tax year, thus directly affecting the amount of the deficiency."). We therefore conclude that the tax court did not exceed its jurisdiction by determining that Zack lacked a net operating loss in the tax year 1988 that could have been used to reduce his tax liability for the tax years 1985 and 1986.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the tax court.

(Synchronized), and Jaclyn Leasing, Inc. (Jaclyn). Sovack owned the machinery and equipment that the Zachova entities used and the building in which they were located. Colt, like ZTD and ZI, was engaged in the tool and die business. Synchronized designed the dies that were used by ZTD, ZI, and Colt. Jaclyn owned a building that it rented to the other business entities operated by Zack and Sova. Zack and Sova each owned one-third of the stock of Colt and Synchronized, one-half of Jaclyn, and, during the years at issue in the present case, one-half of Sovack.

In 1983, Zack and Sova devised a false-invoice scheme that enabled them to receive money from the Zachova entities that they did not report as income for tax purposes. Third parties would issue invoices to the Zachova entities for work that had not actually been performed, and would receive payment from the entities. The third-party payees would then cash the checks, keep 25 percent as a fee for their services, and give the remaining 75 percent of the payment back to Zack and Sova, who would split the proceeds evenly. Payments that were made to the third parties were initially designated as expenses and deducted accordingly on the tax returns of the Zachova entities.

In addition to the false-invoice scheme, Zack and Sova made improvements and repairs to their personal residences that were billed to Sovack. Sovack recorded these payments either as deductible expenses or as capital expenditures that were depreciated.

The Zachova entities started doing business with the Ford Motor Company in 1984. In order to obtain orders from Ford, Zack and Sova began paying bribes to Ed Cooper, a Ford employee. According to Zack's testimony at trial, the bribes totaled $313,572. Sova, in contrast, testified that the Zachova entities paid only $180,572 in bribes. During an earlier interview with a Ford investigator about the bribes, Zack agreed with the $180,572 figure.

In March of 1986, Dennis Meagher became the chief financial officer of the Zachova entities. He learned of the

fraudulent invoices after working there for several months. Meagher proceeded to consult with Follmer, Rudcewicz, & Co. (Follmer), the accounting firm that audited the Zachova entities, and with the entities' attorney. Acting pursuant to Follmer's advice, Meagher revised the records of the Zachova entities by treating the false invoices as advances to Zack and Sova and designating the advances as notes receivable.

Follmer prepared audited financial statements for the Zachova entities, which were issued on June 30, 1987. These statements listed the notes-receivable accounts as an asset. Follmer later instructed Meagher to treat the false-invoice payments as dividends to Zack and Sova. As a result, Meagher revised the books of the Zachova entities and charged the amounts of the fraudulent invoices as dividends to Zack and Sova. The Zachova entities subsequently filed amended federal corporate income tax returns for tax years 1985 and 1986. These amended returns reclassified expenses that had been deducted on the entities' original tax returns.

On May 25, 1988, Oxford Investment Group Tooling Corporation (OIG) purchased the assets of ZTD, ZI, Sovack, and Colt. Certain officers' notes receivable remained on the books and records of the Zachova entities at the time of the purchase. These notes had no relation to the false-invoice scheme, but rather represented legitimate loans that the entities had made to Zack and Sova. Instead of purchasing these notes, OIG reduced its cash down payment for the four purchased companies by the amount of the notes.

## B.   Procedural background

On May 23, 1991, Zack was convicted on one count of conspiracy to defraud the United States, on two counts of tax evasion, and on seven counts of filing false tax returns. Zack's conviction and sentence were affirmed by this court on direct appeal. *United States v. Zack*, Nos. 91-2150, 92-1008, 1993 WL 8744 (6th Cir. Jan. 19, 1993) (unpublished table decision). His various motions to vacate his conviction pursuant to 28 U.S.C. § 2255 were also denied. *Zack v.*

For all of the reasons discussed above, we conclude that the tax court set forth sufficient findings of fact to satisfy Rule 52(a), and that its findings were not clearly erroneous.

## C.   Jurisdiction over Zack's claimed net operating loss from 1988

Zack also contends that he was entitled to a net operating loss carryback from the tax year 1988 to the tax years 1985 and 1986. The tax court rejected Zack's position on this issue, concluding that he failed to establish a net operating loss in 1988. On appeal, Zack contends that the tax court lacked jurisdiction to render a decision on matters pertaining to his 1988 tax year because the Commissioner's notice of deficiency related only to 1985 and 1986.

When a taxpayer challenges the Commissioner's determination that an income tax deficiency exists, "the Tax Court may need to consider 'facts with relation to taxes for other years or other calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, *but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.*'" *Estate of Mueller v. Comm'r*, 153 F.3d 302, 305 (6th Cir. 1998) (emphasis in original) (quoting 26 U.S.C. § 6214(b)). The tax court's jurisdiction therefore "extends no further than the amount of the deficiency before it." *Id.*

Contrary to Zack's belief, the tax court in the present case did not determine whether Zack had paid more or less income tax than he should have for the tax year 1988. Instead, the tax court's evaluation of whether Zack was entitled to a net operating loss for the tax year 1988 related directly to its determination of whether Zack was entitled to reduce his tax liability for tax years 1985 and 1986—the years in question in the present case—based upon a claimed net operating loss in 1988.

The claimed net operating loss from 1988 therefore directly affected the tax court's redetermination of Zack's income tax

When a taxpayer is convicted for criminal tax fraud under 26 U.S.C. § 7201, issue preclusion prevents that taxpayer from later denying liability for civil fraud under § 6653(b) for the same tax year. *Gray v. Comm'r*, 708 F.2d 243, 245-46 (6th Cir. 1983) (affirming the tax court's decision that, as a result of issue preclusion, the petitioner's criminal tax fraud conviction barred him from contesting the Commissioner's decision to impose additional taxes on him for civil fraud under § 6653(b)). Zack was convicted of criminal tax fraud, in violation of § 7201, following a jury trial in 1991. As a result, Zack cannot now challenge the Commissioner's decision to impose additional taxes on him under § 6653(b) for the same tax year.

The tax court also concluded, based upon the Commissioner's proof, that Zack's entire underpayment was attributable to fraud. Zack has not produced any evidence indicating that the tax court's finding was clearly erroneous. Under these circumstances, § 6653(b)(2) places the burden on the taxpayer to establish what portion of the underpayment, if any, was not attributable to fraud. Zack's failure to do so precluded the necessity of additional findings of fact by the tax court.

The sixth and final challenge that Zack makes to the tax court's factual findings concerns his argument that the income should have been reported in 1987, not in 1985 and 1986. To support this contention, Zack relies upon the alterations in the records of the Zachova entities that were made by Meagher. These changes, however, were made for the purpose of correcting improper past accounting procedures. They did not alter the character of the unreported income, nor did they change the year in which the income was received by Zack. The stipulated facts amply support this conclusion. So even though the tax court did not specifically address this claim, its implicit treatment of it was neither clearly erroneous nor a violation of Rule 52(a).

*United States*, No. 99-1279, 2001 WL 549444 (6th Cir. May 14, 2001) (unpublished table decision).

On August 11, 1993, the Commissioner issued a notice of deficiency to Zack for the tax years 1985 and 1986. The Commissioner determined that, as a result of the false-invoice scheme, Zack failed to report $217,162 of income for tax year 1985 and $94,439 of income for tax year 1986. In addition, the Commissioner determined that Zack should have reported an additional $8,233 and $5,951 of income from Sovack on his 1985 and 1986 federal income tax returns, respectively. Zack's alleged failure to report this income resulted in the Commissioner's assessing federal income tax deficiencies against Zack of $45,079 and $62,984 for these two tax years. The Commissioner also increased Zack's tax liability for fraud and substantial understatement of tax, for a total assessment of $269,829.

Zack filed a petition in the tax court, requesting a redetermination of his income tax deficiency, on May 6, 1994. In his petition, Zack did not dispute that he was involved in the false-invoice scheme. Instead, he argued that he should be permitted to reduce the amount of unreported income by the bribes he paid to Cooper. He also claimed that he was entitled to a net operating loss carryback from the tax year 1988 that could be applied to reduce his tax liability for the tax years 1985 and 1986. (Zack's petition claimed a similar net operating loss carryback for the tax year 1989, but, with the exception of a single sentence complaining about the tax court's failure to mention 1989, his briefs focus exclusively on 1988. We shall do the same.)

On June 7, 1999, the tax court granted partial summary judgment to the Commissioner with respect to the assessments for fraud for the tax years 1985 and 1986 that were levied pursuant to 26 U.S.C. § 6653. The court explained that because Zack had been convicted for income tax evasion, the doctrine of collateral estoppel barred him from denying that his underpayments of income tax in 1985 and 1986 were due to fraud.

After conducting a non-jury trial on June 10 and 11, 1999, the tax court found that Zack had paid $90,286 in bribes during the tax years 1985 and 1986. On the theory that Zack was simply a conduit between the Zachova entities and Cooper for the amount of bribes paid, the tax court allowed Zack to reduce the amount of unreported income by $45,143 for each of the two years in question. Zack's unreported income therefore decreased from $217,162 to $172,019 for 1985, and from $94,439 to $49,296 for 1986.

With respect to Zack's claim that he was entitled to carry back a net operating loss from the tax year 1988 to the tax years 1985 and 1986, the tax court concluded that the record did not support Zack's argument. The tax court also upheld the Commissioner's determination that Zack was liable for additional taxes based upon his substantial understatement of tax for the tax years 1985 and 1986, pursuant to 26 U.S.C. § 6661. This timely appeal followed.

## II. ANALYSIS

### A.   Standard of review

We review the tax court's legal conclusions de novo and its factual findings under the "clearly erroneous" standard. *MTS Int'l, Inc. v. Comm'r*, 169 F.3d 1018, 1021 (6th Cir. 1999). Factual findings are clearly erroneous if, based upon the entire record, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001).

### B.   Adequacy and propriety of the tax court's factual findings

Zack contends that the tax court failed to address several of the issues raised in his petition and that, as a result, its factual findings were either nonexistent or so limited as to prevent the possibility of meaningful appellate review. In particular, he argues that the tax court failed to comply with Rule 52(a) of the Federal Rules of Civil Procedure, which requires a court to "find the facts specially and state separately its

made to his personal residence that were billed to Sovack did not constitute income for Zack. This argument is based upon the fact that the Commissioner disallowed $16,465 and $71,921 of false expenses for Sovack in 1985 and 1986, respectively. Zack's reportable income was increased in those years to reflect this disallowance.

According to Zack, Sovack's payments for these improvements reduced Zack's basis in Sovack and therefore were returns of capital, not income. The stipulated facts, however, indicate the error of Zack's position. Specifically, Sovack's records show that its expenses for these improvements and repairs were deducted from the partnership's income and passed through to the partners in the form of reduced income, not charged to the partners' capital account. Moreover, the tax court addressed Zack's objection to the increase in income attributable to Sovack by recognizing that Zack did not contest the Commissioner's proposed findings of fact. It further concluded that the record supported those findings, thereby eliminating the need for additional discussion. We conclude that the tax court's factual findings with respect to Zack's increased income from Sovack not only satisfied the requirements of Rule 52(a), but also were not clearly erroneous.

Zack's fifth objection to the tax court's factual findings relates to his motivation for evading taxes. The Commissioner imposed additional tax liability, pursuant to 26 U.S.C. § 6653(b), on the basis of Zack's fraud. Section 6653(b)(1) provides that "[i]f any part of any underpayment . . . of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." Once the Commissioner establishes that any portion of the underpayment is attributable to fraud, "the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes is not attributable to fraud." 26 U.S.C. § 6653(b)(2).

funds obtained through the false-invoice scheme never constituted legitimate expenses or loans by the Zachova entities. As a result, OIG's reduction of its purchase price to reflect the presence of loans to Zack and Sova does not support a finding that Zack is entitled to a net operating loss for 1988. We therefore conclude that the tax court's finding that Zack failed to establish that he was entitled to a net operating loss for 1988 was not clearly erroneous.

Zack's third objection to the tax court's factual findings pertains to his claim that the doctrine of equitable recoupment should operate in his favor and reduce his income tax liability for 1985 and 1986. Where a "single transaction or taxable event ha[s] been subjected to two taxes on inconsistent legal theories," the doctrine of equitable recoupment permits a taxpayer to offset an adjudicated income tax deficiency by recovering a refund that would otherwise be barred by the statute of limitations. *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299-300 (1946); *Estate of Branson v. Comm'r*, 264 F.3d 904, 909 (9th Cir. 2001) ("The doctrine permits a party to a tax dispute to raise a time barred claim in order to reduce or eliminate the money owed on the timely claim.").

Zack's equitable-recoupment claim relies upon the same facts that were central to his net operating loss argument. As previously discussed, however, Zack is unable to establish that he was entitled to a net operating loss in 1988. He is also mistaken in his belief that his recoupment claim is bolstered by the fact that OIG reduced its purchase price by disclaiming any right to the legitimate loans made by the Zachova entities to Zack and Sova. Moreover, Zack's contention that he should not have paid income tax on the $14,038 in long-term capital gains that was not offset by his losses in 1988 has no bearing on his argument for recoupment. We thus conclude that the tax court's treatment of this issue was not clearly erroneous.

The fourth alleged deficiency in the tax court's opinion pertains to Zack's claim that the improvements and repairs

conclusions of law thereon" where the case is tried without a jury. Fed. R. Civ. P. 52(a).

When evaluating whether the requirements of Rule 52(a) have been satisfied, we do not insist that trial courts make factual findings directly addressing each issue that a litigant raises. *In re Fordu*, 201 F.3d 693, 710 (6th Cir. 1999) ("We have not interpreted [Rule] 52 to require trial courts to explicitly treat each issue raised."); *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792 (6th Cir. 1984) ("It is not necessary for the District Court Judge to prepare elaborate findings on every possible issue raised at trial."). We instead adhere to "a liberal standard for reviewing the adequacy of the [trial court's] findings." *Grover Hill Grain Co.*, 728 F.2d at 792. As a result, "findings are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired." *In re Fordu*, 201 F.3d at 710.

Despite this liberal approach, the trial court's findings must support the ultimate legal conclusions reached. *Grover Hill Grain Co.*, 728 F.2d at 792 (explaining that "there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated"). The findings are necessary not only to reveal the logic behind the trial court's decision, but also to enable an appellate court to conduct a meaningful review of the trial's order. *Id.* at 792-93 ("The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision."). Nevertheless, in accordance with a liberal review of the facts supporting the trial court's decision, this court has explained that "[i]f, from the facts found, other facts may be inferred which will support the judgment, such inferences should be deemed to have been drawn by the District Court." *Id.* at 793. With these principles in mind, we will now proceed to review Zack's claims of error.

Zack first objects to the tax court's finding that he and Sova paid only $180,752 in bribes to Cooper. According to Zack, the tax court failed to give adequate consideration to a record of payments that he presented as an exhibit showing total payments to Cooper of $312,572. The bottom of the first page of this trial exhibit listed the figure $180,752, but the second page showed that additional payments totaling $132,000 were made. Adding the figures from both pages of this exhibit corroborates Zack's trial testimony that he paid $312,572 in bribes.

The tax court did not specifically address the record of payments that Zack presented at trial, but it did express the opinion that Zack's testimony that he had paid $312,752 in bribes was not credible. Its conclusion supports the inference that the tax court did not find Zack's two-page trial exhibit persuasive. In addition, the tax court's statement that "credible evidence" led it to conclude that Zack's share of the bribes paid to Cooper was $90,286 permits an inference that it found the other evidence regarding the amount of money paid as bribes more believable than Zack's testimony and trial exhibit. This other evidence consisted of (1) Sova's testimony that only $180,752 was paid to Cooper as bribes, (2) testimony from Sova and from an IRS revenue agent who had examined Zack's records in preparing for his criminal trial that they had never seen the second page of Zack's trial exhibit, and (3) Zack's agreement with the $180,752 figure in an earlier interview with a Ford Motor Company investigator, and (4) the fact that Follmer used the figure $180,000 in amending the Zachova entities' state and federal income tax returns to account for the bribes paid to Cooper.

The tax court's specific factual findings and the facts that may be inferred from these findings are more than sufficient to support the court's conclusion that Zack was entitled to reduce his unreported income by only $90,286. As a result, we conclude that the tax court's ruling with respect to the amount of the bribes paid to Cooper was not clearly erroneous.

Zack's second argument with respect to the tax court's factual findings relates to its conclusion that he was not entitled to carry back a net operating loss from 1988 to tax years 1985 and 1986. The tax court reached this decision after finding that the record did not support Zack's claim that he realized a net operating loss in 1988. Zack contends that the court failed to make specific factual findings to support its conclusion.

Although the tax court did not discuss the evidence supporting its conclusion that Zack had failed to prove his entitlement to a net operating loss in 1988, the court's opinion incorporated the parties' stipulation of facts and the exhibits submitted in connection with their stipulations. These exhibits provide the factual support for the tax court's conclusion. Specifically, Zack's amended tax return for 1988 reflects capital losses, not a net operating loss. The tax return includes a Schedule D (Capital Gains and Losses), which shows a net long term capital loss of $201,307, and a Form 4797 (Sales of Business Property) in support of Schedule D, which reports capital gains and losses from the sale of his corporations and partnerships.

Unlike capital gains and losses, which are realized when a taxpayer sells capital assets, net operating losses exist where a taxpayer's expenses exceed its income. 26 U.S.C. § 172(c) (defining net operating loss as "the excess of the deductions allowed by this chapter over the gross income"). Nothing in Zack's 1988 federal income tax return supports his assertion that he was entitled to a net operating loss for 1988. Zack claims that he is entitled to such a loss because OIG reduced its purchase price for ZTD, ZI, Sovack, and Colt to reflect the presence of certain notes receivable on these entities' books. But these notes represented legitimate loans that had been made. The proceeds that Zack and Sova received by operating the false-invoice scheme, on the other hand, were first recorded as expenses, later characterized as corporate loans for accounting purposes, and finally designated as dividends to Zack and Sova. These accounting changes did not alter the character of the unreported income. Indeed, the