**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0011n.06

Case Nos. 19-1947/2458/2459

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED**<br>Jan 06, 2021<br>DEBORAH S. HUNT, Clerk |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| PATRICE L. HAROLD and SWEWAT, LLC, | ) | |
| | ) | |
| Defendants-Appellants. | ) | **O P I N I O N** |

BEFORE: SUTTON, BUSH, and MURPHY, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Dr. Patrice Harold failed to fully pay her taxes from 2004 to 2012, then again in 2014. So the Internal Revenue Service placed liens on her property for the more than $400,000 she owed, then sued to enforce its liens against a house in which she had more than $225,000 in equity. But just before the district court granted summary judgment against Harold, she sold the house to a real estate company, SWEWAT, for only $42,000. The district court promptly joined SWEWAT as a party and appointed a receiver to sell the property on the IRS's behalf. Harold and SWEWAT challenge that decision on a number of grounds. Because none has merit, we affirm.

**I.**

In 2005, Harold agreed to pay $625,000 over eight years to purchase the house at issue. Until she completed the payments, Harold would hold equitable title to the house and the seller would retain legal title. *See Cardinal v. United States*, 26 F.3d 48, 49 (6th Cir. 1994). Eight years later, after Harold had paid only $223,590 on the original contract, the parties amended the contract to extend its term for an additional nine years.

This suit began when the United States sought to sell Harold's equitable title to recover some of the more than $400,000 in tax liabilities she owed. When the government sought summary judgment, Harold conceded almost all issues. She argued only that the IRS had misapplied past tax refunds to pay her husband's outstanding tax liabilities, and that as such the IRS owed her enough to nearly cover the amount she owed it. The district court granted the government summary judgment, concluding that the statute of limitations and the doctrine of laches barred Harold's arguments. That grant of summary judgment gave rise to the first appeal in this case.

Unbeknownst to the government and the district court, and after the government moved for summary judgment, Harold sold the house to SWEWAT. Then, six days after the district court granted summary judgment, she recorded the deed giving SWEWAT the property. Although SWEWAT nominally paid $220,000, Harold subtracted most of that sum in tax and insurance credits and other costs. She ultimately received only $42,937.28 from the sale. Three days later, she entered into a contract to lease the house from SWEWAT for $4100 per month. That sum is only $200 more than her original payment obligations under the land-sale contract, but it is a staggering $2300 more than the rent that the district court ordered when it appointed a receiver.

After Harold informed the district court that she had sold the house, the government filed an emergency motion to bring SWEWAT into the case. Concerned that the property might be sold

again without notice to the court, the district court granted the emergency motion before SWEWAT could be served. Then SWEWAT and Harold jointly moved to vacate the order appointing a receiver, arguing that the sale of the house had stripped the government's liens from the property. The district court denied the motion because SWEWAT had both record and actual notice of the liens, so a "straightforward application of long-accepted lien principles makes clear that SWEWAT took" the property subject to the government's liens. That decision, and the district court's decision to join SWEWAT in the first place, gave rise to the other two appeals.

**II.**

On appeal, Harold and SWEWAT offer an array of challenges to the district court's grant of summary judgment and its denial of their motion for relief from the appointment of a receiver. First, Harold argues that the district court should have granted her motion to file a sur-reply to challenge the government's statute of limitations argument based on an equitable recoupment theory, and that if we apply that theory we should reverse the district court. Second, Harold and SWEWAT argue that the liens did not remain with Harold's property interest after she sold it to SWEWAT. And third, they argue that the district court's order joining SWEWAT was both substantively and procedurally improper. All three arguments prove unavailing.

**A. Summary Judgment**

Before the district court, Harold preserved only one ground to oppose summary judgment: that the IRS owed her almost enough money to cover the amount she owed. At no point before this suit did Harold contact the IRS about the almost $45,000 she claims it misplaced (and the interest that she says increases that sum to just over $377,000). When she raised those contentions before the district court, they amounted to an affirmative counterclaim to recover the amount that she says the IRS owes her and apply that sum against her liabilities. The district court found that

her arguments to that effect were barred by the statute of limitations and the doctrine of laches. We review that decision *de novo*. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 447–48 (6th Cir. 2020).

Harold identifies two years (1993 and 1995) where the IRS took a refund for which she would have been eligible and applied it to her husband's past tax liabilities, and one year (1998) where the IRS says it paid her a refund that she now claims to have never received, all before the turn of the millennium. Given that the longest statute of limitations that could apply to her claims is the Tucker Act's six-year limit, her claims are time barred. 28 U.S.C. § 2401.

To overcome that bar, Harold sought to invoke the doctrine of equitable recoupment in a sur-reply brief before the district court. We need not decide whether the district court abused its discretion by denying her leave to file that sur-reply because, in any event, her equitable recoupment argument is unpersuasive.

Equitable recoupment is a judge-made doctrine that, in narrow circumstances, allows a litigant to duck a statute of limitations to avoid an unjust windfall to the taxpayer or the government. *See United States v. Dalm*, 494 U.S. 596, 602–05 (1990) (describing the doctrine's origins in *Bull v. United States*, 295 U.S. 247 (1935)). It applies when "a single transaction or taxable event ha[s] been subjected to two taxes on inconsistent legal theories." *Zack v. Comm'r*, 291 F.3d 407, 414 (6th Cir. 2002) (quoting *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 300 (1946)). That such an occurrence is exceedingly rare is clear from the paucity of case law in this court applying the doctrine, and the fact that most such cases end in failure for the party seeking to invoke its protection. *See, e.g.*, *id.*; *Estate of Mueller v. Comm'r*, 153 F.3d 302, 307 (6th Cir. 1998). Here, Harold's sole argument for why distinct tax years spanning decades all consist of a single taxable event is that all of them affected her, and when taken together they could

alter the amount she owes. But the fact that the refunds and liabilities all affect Harold does not make them a single transaction. As such, her equitable recoupment argument fails.[1]

## B. The Liens

It is black letter law that when a property is subject to a lien, "no matter into whose hands the property goes, it passes" encumbered by the lien. *United States v. Bank of Celina*, 721 F.2d 163, 167 (6th Cir. 1983) (quoting *United States v. Bess*, 357 U.S. 51, 57 (1958)). Despite that basic principle, Harold and SWEWAT argue that after Harold sold the house to SWEWAT, the government's liens applied only to the sale proceeds, not the house itself. They are incorrect.

They base their argument on *Phelps v. United States*, 421 U.S. 330 (1975). The parties in that case agreed that the IRS's lien on a property applied only to the proceeds of a sale to a good-faith purchaser who had no notice of the lien. *Id.* at 334 & n.4. So when the IRS prevailed, it could only enforce its lien against those proceeds. *Id.* at 334. Harold and SWEWAT rely on that fact in an attempt to argue that *Phelps* created a rule that when property subject to a lien is sold, the IRS can only recover against the proceeds. But *Phelps* itself contradicts their argument that a lien reattaches only to the proceeds of the sale. 421 U.S. at 334–35 (noting that "the lien reattaches to the thing and to whatever is substituted for it" unless the original thing passes into the hands of a good-faith purchaser without notice (quoting *Sheppard v. Taylor*, 30 U.S. (5 Pet.) 675, 710 (1831))). So it certainly did not upset the basic rule that a property encumbered by a lien retains the lien after sale. *Bank of Celina*, 721 F.3d at 169. Here, the IRS had filed its lien notices, so SWEWAT had constructive notice, which suffices for the property to remain encumbered by the lien. What's more, SWEWAT even noted the liens in its land-sale contract, so it had actual notice. Thus, it purchased the house subject to the liens.

---

[1] Because Harold's claims are time barred, the district court's evidentiary rulings are irrelevant.

**C. Joinder**

Appellants offer two reasons that the district court should not have joined SWEWAT. Substantively, they argue that the district court erred in concluding that SWEWAT should be bound by the grant of summary judgment. Procedurally, they argue that the district court's decision to join SWEWAT before it could be served violates Federal Rule of Civil Procedure 25. We review a district court's decision to join a party under Rule 25 for abuse of discretion. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 154 (6th Cir. 1992).

As to the substantive argument, "[p]ersons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment, despite a lack of knowledge." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973). After all, if a party to litigation over property could sell it without the purchaser being bound, it would enable unscrupulous litigants to pass the property from hand to hand to ensure that "a final decree bearing fruit could never be reached." *G. & C. Merriam Co. v. Saalfield*, 190 F. 927, 932 (6th Cir. 1911). Our logic over a century ago in *Saalfield* applies with equal force today. Thus, Harold and SWEWAT cannot use their last-second sale to keep the IRS from enforcing its liens.

On procedure, the district court acknowledged that it joined SWEWAT before it could be served with process, violating Rule 25(c). It did so soon after Harold had sold the property without notice to the government or court "to preserve the assets in the face of shifting interests." After joining SWEWAT, the district court offered the company ample opportunity to challenge the joinder in three separate filings and a hearing. It heard those challenges, and it concluded that SWEWAT was properly joined under Rule 25(c) as the recipient of the interest at issue in the action. Fed. R. Civ. P. 25(c). That decision was correct. Rule 25 allows a court to join the recipient of a transferred property interest, which SWEWAT certainly was. And here, the district court was

further guided by the Internal Revenue Code's command that anyone "claiming any interest in the property involved in" an action to enforce a federal lien "shall be made" a party to the action. 26 U.S.C. § 7403(b). So joining SWEWAT was proper. In light of that fact, declining to dismiss SWEWAT, re-serve it, then re-join it was a proper application of Federal Rule of Civil Procedure 61's requirement that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

## III.

For those reasons, we affirm both the district court's grant of summary judgment and its denial of SWEWAT and Harold's motion to vacate the order appointing a receiver.