In re Gilbert FOSTER, Debtor.

State of Ohio, Bureau of Workers' Compensation, Plaintiff,

v.

Gilbert Foster, Defendant.

Bankruptcy No. 00–33492.
Adversary No. 00–3194.

United States Bankruptcy Court, S.D. Ohio, Western Division.

June 27, 2002.

Susan K. Cliffel, Assistant Attorney General, Revenue Recovery Section, Columbus, OH, for plaintiff.

Richard P. Arthur, Dayton, OH, for defendant.

Ruth A. Slone–Stiver, Dayton, OH, Chapter 7 Trustee.

## *MEMORANDUM OPINION*

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

Plaintiff State of Ohio, Bureau of Workers' Compensation (the "BWC"), has filed a Motion for Summary Judgment (the "Summary Judgment Motion") on its complaint, which seeks a judgment that a debt owing from Defendant Gilbert Foster ("Foster" or "Debtor") to the BWC is nondischargeable. The BWC asserts that a factual finding that Foster obtained workers' compensation benefits through fraud, which was made in three separate written decisions and orders (collectively, the "Orders") issued by the Industrial Commission of Ohio (the "Industrial Commission"), should be given preclusive effect by the Court and the resulting obligation to repay the benefits (the "Repayment Obligation") held nondischargeable under 11 U.S.C. § 523(a)(12)(A). In his response to the Summary Judgment Motion (the "Response"), Foster argues that: (1) the factual findings contained in the Orders should not be given preclusive effect because they were not made by a court of competent jurisdiction; and (2) the issue of whether Foster engaged in fraud was not actually litigated in the Industrial Commission proceeding.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, made applicable in this adversary proceeding by Fed.R.Bankr.P. 7052.

## I. *Jurisdiction*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

## II. *Factual and Procedural Background*

The undisputed facts of this case are drawn from the submissions of the parties, including the documents, which are authenticated by affidavit, attached to the Summary Judgment Motion.

Foster is 64 years old. In 1962 he went to work as a laborer for Wagner Manufacturing ("Wagner"). In June 1965, while shoveling sand into a mold, Foster injured his back. In August 1965 Foster filed an Application for Compensation (the "Application") with the BWC seeking payment of benefits for his back injury. The Application was assigned Claim No. 2–426837 (the "First Claim"). Foster received temporary total disability benefits on the First Claim from June 19, 1965 through October 27, 1968.

At some point in 1967 Foster terminated his employment with Wagner. On July 14, 1972, Foster filed a motion with the BWC seeking permanent total disability benefits with respect to the First Claim. A letter report supporting the motion was filed by Albert Kostoff, M.D., who recommended that Foster be awarded permanent total disability benefits. The Industrial Commission found that Foster was totally and permanently disabled as a result of the 1965 back injury and ordered that he receive permanent total disability benefits unless future facts or circumstances warranted discontinuance of the benefits.

With respect to the First Claim, the BWC paid Foster temporary total disability benefits from June 19, 1965 through October 27, 1968; permanent partial disability benefits from October 28, 1968 through July 8, 1972; and permanent total disability and Disabled Workers' Relief Fund ("DWRF") benefits from July 9, 1972 through November 20, 1999.

In November 1973 Foster accepted employment as a laborer with the City of Dayton Public Works Department. He worked primarily on a street maintenance crew and his duties included sweeping leaves, filling pot holes, picking up tree limbs, paving, salting, and snow removal. On April 11, 1977, while on the job, Foster injured his back lifting a guardrail. On June 15, 1977, he signed and submitted to the BWC a PE (Public Employee) Application for Payment of Medical Benefits (the "PE Application"). The PE Application was assigned Claim No. PE672737 (the "Second Claim").

At the time Foster submitted the Second Claim, he was receiving permanent total disability and DWRF benefits on the First Claim. On the PE Application, in response to the question "Have you filed any other claims with the Bureau or Ind. Comm. (If yes, give claim no. & body parts)," Foster checked the box marked "Yes" and listed ten other public employee claims. He did not list the First Claim.

The Industrial Commission ultimately awarded Foster permanent total disability and DWRF benefits with respect to the Second Claim. He was paid temporary total disability benefits on the Second Claim from May 30, 1980 until February 18, 1987 and permanent total disability and DWRF benefits from February 19, 1987 through November 20, 1999.

At some point in 1999 the BWC initiated an investigation of Foster after becoming aware that he was receiving

permanent total disability and DWRF benefits on both the First and Second Claims. After concluding its investigation, the BWC referred the matter to the Industrial Commission. A hearing was conducted on October 29, 1999 before the Industrial Commission (the "Hearing") at which the BWC sought the following relief: (1) termination of permanent total disability benefits and DWRF benefits as to the First Claim beginning November 12, 1973; (2) a declaration of permanent total disability fraud as to both claims; and (3) a declaration of overpayment, and termination, of all temporary total, permanent total, and DWRF benefits in connection with the Second Claim. The Hearing was conducted before Industrial Commission Hearing Officer Christopher M. Kalafut (the "Hearing Officer"). Foster and his attorney were present at the Hearing; however, Foster did not testify and it does not appear from the record that his attorney made any type of presentation.[1] The Orders—three separate written decisions and orders issued by the Hearing Officer—emanated from the Hearing.

The Hearing Officer's first decision and order (the "First Decision") related to the First Claim, addressing the overpayment of temporary and permanent total disability benefits, the termination of those benefits, and the issue of whether Foster committed fraud in connection with the First Claim. In the First Decision, the Hearing Officer determined that Foster had engaged in fraudulent conduct. His findings were based on the testimony of a workers' compensation investigator (the "Investiga-

tor") at the Hearing and the written report of the BWC investigation (the "Investigative Report"). The Hearing Officer found that Foster had concealed the fact that he was working while receiving permanent total disability benefits on the First Claim. Based on a June 15, 1981 letter signed by Foster, which stated that he had not worked since being declared permanently and totally disabled, and Foster's failure to inform the BWC that he was employed while receiving those benefits, the Administrator of the BWC (the "Administrator") paid permanent total disability benefits on the First Claim from the State Insurance Fund (the "Fund"). The Hearing Officer determined that: (1) Foster's statement that he was not working and had not worked was made with knowledge of its falsity and was so inconsistent with the facts that knowledge of its falsity could be inferred; and (2) Foster made misrepresentations to, and concealed facts from, the Administrator with the intent to mislead the Administrator and induce his reliance on the false representations in order to obtain permanent total disability benefits; (3) Foster's fraudulent intent could be inferred from reviewing the entire BWC file, as it contained a number of forms submitted to the BWC that concealed the fact that Foster was receiving benefits while employed; and (4) the statements made by Foster contained in the various forms submitted to the BWC, taken as a whole, indicate an intent to mislead the Administrator and induce reliance on the false information contained in the statements. The Hearing Officer also found that the Administrator justifiably relied on the documents submitted by Foster and that such

---

1. Foster's appearance at the Hearing is not noted in the Orders. Foster's Response states, however, that: (1) "the Industrial Commission conducted an administrative hearing wherein the Defendant was represented by counsel but never gave any testimony under oath" (Response at 4); and (2) "[t]he prior proceeding in the case at hand was an administrative proceeding between the Staff Hearing Officer of the Industrial Commission of Ohio and Mr. Foster and Mr. Foster's attorney." Response at 6.

reliance resulted in the Administrator improperly making payments from the Fund. The Hearing Officer concluded that the BWC had proven the six prima facie elements of common law fraud by a preponderance of the evidence. *See* Summary Judgment Motion, Exhibit C, Industrial Commission Record of Proceedings, Findings of Fact and Order of the Commission, Claim No. 2–426837 at 3. As a result of his finding of fraud, the Hearing Officer ordered termination of benefit payments with respect to the First Claim and recoupment of the overpayments.[2]

The Hearing Officer issued two separate written decisions and orders relating to the Second Claim (the "Second Decision" and "Third Decision," respectively). The Second Decision dealt with the overpayment of the temporary total disability payments on the Second Claim. In the Third Decision, the Hearing Officer considered: (1) the overpayment and termination of permanent total disability and DWRF benefits on the Second Claim; and (2) whether Foster had committed fraud in connection with the Second Claim. Virtually identical findings were made by the Hearing Officer in both the Second and Third Decisions. The Hearing Officer's findings in the Second and Third Decisions were based on the Investigator's testimony at the Hearing and the Investigative Report. The Hearing Officer concluded, after reviewing the evidence contained in the BWC's files, that the Debtor had obtained benefits for the Second Claim while receiving permanent total disability benefits on the First Claim. The Hearing Officer determined that: (1) Foster made representations that he had no prior claims for injury to his back when he submitted information to doctors and the Administrator in connection with the Second Claim; (2) these representations were made with knowledge of their falsity; and (3) Foster intended to mislead the Administrator and induce his reliance on these misrepresentations. Foster's intent to mislead was inferred from statements he made to treating physicians that he had no other back injury claims and his failure to inform the Administrator of the previous industrial injury that occurred in June 1965. The Hearing Officer concluded that the Administrator justifiably relied on Foster's material misrepresentations and, as a result, made improper benefit payments from the Fund.

Based on his findings in the Second and Third Decision, the Hearing Officer concluded that, with respect to the Second Claim, "the claimant's activities constute[sic] fraud, as all 6 of the prima facie elements of fraud have been proven by a preponderance of the evidence." Summary Judgment Motion, Exhibit C, Industrial Commission Record of Proceedings, Findings of Fact and Order of the Commission, Claim No. PE672737 (PCN: 1992782) at 2; and Industrial Commission Record of Proceedings, Claim No. PE672737 (PCN: 1992781) at 2. Given the

---

**2.** Under section 4123.52 of the Ohio Revised Code, the Industrial Commission has continuing jurisdiction to determine whether an overpayment of benefits has been made as a result of fraud. Ohio Rev.Code Ann. § 4123.52 (Anderson 2001). *See also State ex rel. Bowman v. Indus. Comm'n,* 65 Ohio St.3d 317, 319, 603 N.E.2d 1000, 1002 (1992) (holding that Industrial Commission has continuing jurisdiction under section 4123.52 of the Ohio Revised Code to modify previous orders based on fraud); *State ex rel. Inland Div. v. Collins,* 34 Ohio App.3d 80, 83, 517 N.E.2d 247, 250 (1986) (same). Section 4123.511(J)(4) of the Ohio Revised Code provides that the Administrator and self-insured employers may use the repayment schedule contained in that statute, "or any other lawful means, to collect payment of compensation made to a person who was not entitled to compensation due to fraud as determined by the administrator or the industrial commission." Ohio Rev.Code Ann. § 4123.511(J)(4) (Anderson 2001).

Hearing Officer's finding of fraud in the Second and Third Decisions, the Industrial Commission determined that all temporary and permanent total disability and DWRF benefits received by Foster in connection with the Second Claim were overpaid and ordered recoupment of the overpayments.

Foster moved for reconsideration of the Hearing Officer's findings made in the Second and Third Decisions; however, the request for reconsideration was denied by the Industrial Commission. Foster took no further action to challenge the Orders.

The Repayment Obligation—i.e., the permanent total disability and DWRF benefits received by Foster on the First Claim after November 1973, when he became employed by the City of Dayton, together with the temporary total disability, permanent total disability, and DWRF benefits received by Foster in connection with the Second Claim—totals $395,657.96. *See* Summary Judgment Motion, Exhibit A, Affidavit of Ellen Wentzel, ¶ 19.

### III. *Arguments of the Parties*

According to the BWC, the Hearing Officer's finding that Foster obtained workers' compensation benefits through fraud must be given preclusive effect in this adversary proceeding. Because the Orders have issue-preclusive effect, the BWC argues, Foster may not relitigate the issue of fraud. Thus, entry of a judgment declaring the Repayment Obligation nondischargeable under 11 U.S.C. § 523(a)(2)(A) is required.

Foster maintains that the findings of fraud contained in the Orders are not entitled to preclusive effect for two reasons. First, the findings of fraud were made in the context of an administrative hearing rather than by a court of competent jurisdiction. Foster asserts that an administrative finding of fact is not entitled to preclusive effect in a subsequent judicial proceeding. Second, even if findings of

fact made in an administrative hearing can have issue-preclusive effect, Foster contends that the Orders should not be given that effect here because the issue of fraud was not actually litigated in the Industrial Commission proceeding. No actual litigation occurred before the Industrial Commission, Foster argues, because he did not testify at the Hearing.

### IV. *Legal Analysis*

#### A. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (made applicable in this adversary proceeding by Fed.R.Bankr.P. 7056). On a motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 512 (6th Cir.2000). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *McKenzie*, 219 F.3d at 512. The nonmoving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.*, 198 F.3d

578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie,* 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## B. *General Preclusion Principles*

 The full faith and credit statute, 28 U.S.C. § 1738,[3] requires federal courts to accord a state court judgment the same preclusive effect the judgment would have in a state court. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir.1999). Under Ohio law, "[t]he doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Township,* 73 Ohio St.3d 379, 381, 653 N.E.2d 226, 228 (1995).[4] As the Sixth Circuit explained in Fordu:

Claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Fordu,* 201 F.3d at 703–04 (citing *Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997) (citing *Felder v. Cmty. Mut. Ins. Co.,* No. 96–3320, 1997 WL 160373, at *3–4 (6th Cir. April 4, 1997) (unpublished))). "Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffmann–LaRoche, Inc.,* 80 Ohio St.3d 212, 217, 685 N.E.2d 529, 533 (1997). The doctrine applies when a fact or issue: "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994).

 The doctrine of issue preclusion applies in the context of dischargeability litigation. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack),* 65 F.3d 51, 53 (6th Cir.1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a).") (citing *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111

---

3. The full faith and credit statute provides in pertinent part:

The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738.

4. The Sixth Circuit noted in *Fordu* that the United States Supreme Court has expressed a preference for use of the terms "issue preclusion" and "claim preclusion" rather than the traditional phrases "res judicata" and "collateral estoppel." *See Fordu,* 201 F.3d at 702–03 (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. 892). "Claim preclusion generally refers to the effect of a judgment barring litigation of a matter that has never been litigated, because of a determination that it should have been advanced in an earlier suit. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided." *Migra,* 465 U.S. at 77, n. 1, 104 S.Ct. 892.

S.Ct. 654, 112 L.Ed.2d 755 (1991)). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Bursack,* 65 F.3d at 53. *See also Marrese,* 470 U.S. at 380, 105 S.Ct. 1327 ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981) ("[T]hat Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.").

## C. *Preclusive Effect of an Administrative Determination*

Although the full faith and credit statute refers to "judicial proceedings," "with the development of administrative bodies possessing adjudicatory or quasi-adjudicatory powers, *res judicata* and collateral estoppel principles have come to be applied not only to judicial determinations but also to administrative determinations that are thought to be 'judicial' in nature." *Lupo v. Voinovich,* 858 F.Supp. 699, 702 (S.D.Ohio 1994).

In *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court, quoting dictum from its earlier decision in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), held that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have an adequate opportunity to litigate,' ... federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *See also Noyes v. Channel Prods., Inc.,* 935 F.2d 806, 809 (6th Cir.

1991) ("When the fact finding of a *state agency* is involved, a federal court must accord such findings the same degree of preclusive effect that they would receive in the courts of that state.") (citing *Elliott,* 478 U.S. at 799, 106 S.Ct. 3220). Thus, the factual findings of the Industrial Commission must be given the same preclusive effect here that they would be entitled to in an Ohio court. The Court therefore must look to Ohio law to determine how "*res judicata* and collateral estoppel principles [are applied] to decisions of administrative agencies." *Lupo,* 858 F.Supp. at 702.

The BWC cites *State ex rel. Kroger Co. v. Industrial Commission,* 80 Ohio St.3d 649, 687 N.E.2d 768 (1998) and *Cooper v. Administrator of Ohio Bureau of Workers' Compensation,* No. CA99–07–082, CA99–09–108, 2000 WL 710082 (Ohio Ct.App. May 30, 2000) in support of its contention that preclusion principles apply to proceedings before the Industrial Commission. This proposition is correct as far as it goes. But the *Kroger* and *Cooper* decisions do not address the precise issue the Court must resolve here: whether, and under what circumstances, factual findings made in an administrative hearing are entitled to preclusive effect in a subsequent *judicial,* rather than *administrative,* proceeding. *Kroger* and *Cooper* simply hold that a factual finding made in the context of an Industrial Commission hearing is entitled to preclusive effect in a subsequent workers' compensation proceeding involving the same parties and issues. And a third decision relied on by the BWC—*Superior's Brand Meats, Inc. v. Lindley,* 62 Ohio St.2d 133, 403 N.E.2d 996 (1980)—also involved successive administrative proceedings (before the Board of Tax Appeals) and did not deal with the question of whether a factual finding made in the context of an administrative hearing is entitled to preclusive effect in a later

judicial proceeding. There, the court held that Superior could not relitigate the factual issues determined by the Board of Tax Appeals in a second proceeding before the Board. *Id.* at 137, 403 N.E.2d at 1000. Adopting the United States Supreme Court's dictum in *Utah Construction* as a rule of law, the *Superior's Brand* court stated:

> We recognize the need for flexibility in applying the doctrine of collateral estoppel to the administrative decision-making process; however, because of the need for finality, we hold that ordinarily where an administrative proceeding is of a judicial nature and where the parties have had an adequate opportunity to litigate the issues involved in the proceeding, the doctrine of collateral estoppel may be used to bar litigation of issues in a second administrative proceeding. In so ruling we join numerous courts including the United States Supreme Court.

*Id.* at 135, 403 N.E.2d at 999 (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

An Ohio appellate court in *Pullar v. UpJohn Health Care Services, Inc.*, 21 Ohio App.3d 288, 488 N.E.2d 486 (1984) held that the factual findings made in an administrative hearing—a proceeding before the Unemployment Compensation Board of Review (the "UCBR"—were entitled to preclusive effect in a subsequent judicial proceeding). In *Pullar*, the plaintiff in the state court action had been discharged from employment for failure to follow a supervisor's instructions. A referee for the UCBR determined that she had been discharged for "just cause in connection with work." *Id.* at 290, 488 N.E.2d at 489. The plaintiff later filed an action for age discrimination under former section 4101.17 of the Ohio Revised Code.[5] The trial court held that the referee's finding of just cause made in the administrative hearing was entitled to preclusive effect—i.e., it barred the plaintiff from attempting to prove that she was terminated due to her age. *Id.* at 289, 488 N.E.2d at 488.

In its decision affirming the trial court, the court of appeals in *Pullar* noted that the *Utah Construction* test for determining whether an administrative determination should be given preclusive effect had been adopted by the Ohio Supreme Court in *Superior's Brand*, albeit in the context of successive administrative proceedings. *Id.* at 291–92, 488 N.E.2d at 490. Although the *Pullar* court observed that "caution must be exercised before according an administrative determination collateral estoppel effect in a judicial proceeding," *id.* at 292, 488 N.E.2d at 490, it rejected the appellant's contention that the doctrine of administrative res judicata should apply only in the context of successive administrative proceedings, and not in a subsequent judicial proceeding. The court reasoned:

> Appellant argues that collateral estoppel and/or *res judicata* was applicable in *Superior's Brand* because the second proceeding was before the same administrative agency. However, there is no reason to justify retrying the reason for appellant's discharge in the case *sub judice* when the identity of the parties and the issue—i.e., the reason for Pullar's termination—would be exactly the same as those in the [unemployment compensation] hearing.

*Id.* at 292, 488 N.E.2d at 490–91. Concluding that the *Utah Construction* test is the appropriate standard for determining

---

**5.** Former section 4101.17 of the Ohio Revised Code has been amended and renumbered as Ohio Rev.Code Ann. § 4112.14 (Anderson 2001).

whether an administrative finding is entitled to preclusive effect in a later judicial proceeding, the *Pullar* court, in paragraph 2 of the syllabus of its opinion, stated:

An administrative determination can collaterally estop a civil action when the following factors are present:

(a) the board was acting in a judicial capacity when it considered the claims of the parties;

(b) the factual disputes resolved were clearly relevant to issues properly before it; and

(c) both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek out review of any adverse findings.

*Id.* at 288, 488 N.E.2d at 487.[6]

■■■ *Superior's Brand* and *Pullar,* taken together, establish that Ohio courts will accord findings of fact made in an administrative hearing issue-preclusive effect where:

(1) the administrative body acted in a judicial capacity;

(2) there is an identity of parties and issues;

(3) the administrative body resolved factual disputes that were clearly relevant to the issues properly before it; and

(4) the parties have had a full and fair opportunity to litigate and seek review of any adverse findings.

*See Superior's Brand,* 62 Ohio St.2d at 135, 403 N.E.2d at 999; *Pullar,* 21 Ohio App.3d at 292, 488 N.E.2d at 490. Application of these principles compels the conclusion that the findings of fraud contained in the Orders must be given issue-preclusive effect here.

**1. *The Industrial Commission Acted in a Judicial Capacity.***

■■■ Under Ohio law, an administrative hearing is considered judicial in nature where there is a requirement for notice, hearing, and the opportunity for the introduction of evidence. *See M.J. Kelley Co. v. City of Cleveland,* 32 Ohio St.2d 150, 153, 290 N.E.2d 562, 564 (1972) ("[I]n deciding whether an act by an administrative agency is quasi-judicial the ... most common test is to determine whether the function under consideration involves the exercise of discretion and requires notice and a hearing.") (citation omitted). *See also Nuspl v. City of Akron,* 61 Ohio St.3d 511, 516, 575 N.E.2d 447, 450 (1991) (holding that an administrative hearing is judicial in nature where there is "notice to the [administrative litigant], and the opportunity ... to state his or her case in a hearing, which would necessarily involve the introduction of evidence by way of exhibits and/or testimony").

**6.** Currently, in Ohio, the findings of the UCBR are not entitled to preclusive effect. *See* Ohio Rev.Code Ann. § 4148.28(Q) (Anderson 2001). This statute, which was originally enacted October 24, 1989, legislatively altered the outcome of *Pullar* insofar as findings of the UCBR are concerned. But *Pullar's* holding—that factual findings of an administrative agency will be accorded preclusive effect in a subsequent judicial proceeding if the *Utah Construction* criteria are satisfied—continues to be applied by Ohio courts where factual findings are made by an administrative agency other than the UCBR.

*See, e.g., Delekta v. Snyder Farm,* No. 95AP060042, 1995 WL 776666, at *1–2 (Ohio Ct.App.Dec. 19, 1995) (holding, based on application of *Pullar* factors, that Ohio Civil Rights Commission's finding of no probable cause in a sexual discrimination case is not entitled to preclusive effect in a subsequent civil action); *Wilson v. Bd. of Stark County Comm'ns,* No. CA–8159, 1990 WL 173373, at *2 (Ohio Ct.App. Nov. 5, 1990) (applying *Pullar* and holding that issue of validity of appellant's layoff had been reviewed by the State Personnel Board of Review and could not be relitigated in a later judicial proceeding).

According to the Records of Proceedings of the Industrial Commission, *see* Summary Judgment Motion, Exhibit C, Affidavit and Certification Pursuant to R.C. 4121.09 and attachments, Foster received not less than 14 days' written notice of the Hearing on the issues raised as to both the First and Second Claims. Testimony was elicited from the Investigator. The Investigative Report, along with documents from the BWC's files, were reviewed and relied upon by the Hearing Officer. Foster was present and represented by counsel at the Hearing. He was afforded the opportunity to testify, present the testimony of other witnesses, introduce documentary evidence, and cross-examine the Investigator. Thus, the Hearing before the Industrial Commission certainly was judicial in nature.

### 2. *Identity of Parties and Issues*

#### a. *The Parties*

The parties to both the Industrial Commission proceeding and this dischargeability litigation are identical: the BWC and Foster.

#### b. *The Issue—Fraud*

■ The issue before the Industrial Commission is the same as the issue in this case: Did Foster obtain the workers' compensation benefits comprising the Repayment Obligation through fraud? To prevail on a claim for common law fraud in Ohio, a plaintiff must prove the following elements: (1) a representation, or where there is a duty to disclose, a concealment of a fact; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance by the other party upon the representation

or concealment; and (6) a resulting injury proximately caused by the reliance. *See Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083 (1991); *Cleveland Indoor Soccer Co. v. Haaskivi*, 78 Ohio App.3d 750, 756, 605 N.E.2d 1315, 1319 (1992).

■ Under § 523(a)(2)(A) of the Bankruptcy Code, a debt for money, property, services, or an extension, renewal, or refinancing of credit is not dischargeable to the extent the debt was incurred through false pretenses, false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). The elements of fraud must be proven by the creditor by a preponderance of the evidence. *See Grogan*, 498 U.S. at 291, 111 S.Ct. 654. In order to establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must prove the following elements:

(1) the debtor obtained money through a material representation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc., (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998) (footnote omitted) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)).

Although Foster argues that he did not intend to misrepresent his injuries or deceive the BWC, the Hearing Officer made specific factual findings as to the existence of each element of fraud, including Foster's intent to deceive the BWC in order to obtain the payment of benefits on both the First and Second Claims. The Hearing Officer concluded that the BWC established each element of fraud by a prepon-

derance of the evidence. Because "the elements of a dischargeability claim under 11 U.S.C. § 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio," *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (6th Cir. BAP 1998), and because the standard of proof on which the Industrial Commission based its finding of fraud (a preponderance of the evidence) is the same as that required to establish an exception to discharge under § 523(a) of the Bankruptcy Code, *see Grogan*, 498 U.S. at 291, 111 S.Ct. 654, preclusive effect must be given to the findings of fraud made by the Hearing Officer.

### 3. The Industrial Commission Resolved the Disputed Issue of Fraud, Which Was Clearly Relevant to the Matter Before It.

The Hearing Officer expressly found in each of the Orders that Foster's conduct, in simultaneously collecting workers' compensation benefits on the First and Second Claims, was fraudulent. And as noted above, the Administrator may recover workers' compensation benefits paid to a person who was not entitled to the benefits due to fraud as determined by the Industrial Commission. Ohio Rev.Code Ann. § 4123.511(J)(4) (Anderson 2001). The Industrial Commission's determination of fraud thus was clearly relevant to the issue before it.

### 4. Foster Was Afforded an Adequate Opportunity to Litigate the Issue of Fraud and Seek Review of the Industrial Commission's Findings.

Foster argues that the issue of fraud was not actually litigated before the Industrial Commission because, although he appeared at the Hearing with counsel, he elected not to testify. The BWC, on the other hand, asserts that Foster's opportunity to litigate the issue of fraud in the Industrial Commission proceeding, rather than his actual level of participation at the Hearing, should be determinative of whether the Hearing Officer's findings should be given preclusive effect. The Court agrees.

As Judge Holschuh observed in *Lupo*, "[e]specially with respect to administrative agencies, the Ohio courts are cautious to insure both that the issue was actually litigated and determined by the tribunal, and that it was essential to the judgment." *Lupo*, 858 F.Supp. at 703. Caution is required to insure that a litigant's right to due process is preserved:

[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.

*Cooper v. City of North Olmsted*, 795 F.2d 1265, 1268 (6th Cir.1986) (quoting *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200–01, 443 N.E.2d 978, 985 (1983)). But as the Ohio Supreme Court noted in *Goodson*, a party's due process rights are protected where a full opportunity to litigate disputed issues is provided. *Goodson*, 2 Ohio St.3d at 200–01, 443 N.E.2d at 985 ("The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and be 'heard' in the due process sense.").

Applying the principles enunciated in *Goodson*, an Ohio appellate court in *John Hancock Mutual Life Insurance Co. v. Bird*, 69 Ohio App.3d 206, 590 N.E.2d 336 (1990) held that a litigant's decision not to participate fully in a proceeding does not limit the preclusive effect of an order en-

tered therein in a later action. In *Bird,* John Hancock Mutual Life Insurance Company ("John Hancock") appealed from the trial court's order granting summary judgment in favor of the defendants, Mildred Bird, John Bird, and Wanda Ross, in a subrogation action brought by John Hancock. The Birds had been awarded $50,000 in a prior interpleader action commenced by Ross's automobile insurer, State Farm Automobile Insurance Company ("State Farm"). The interpleader action followed an automobile accident in which Ross, the driver, and her passengers, including Mildred Bird, were injured. In the interpleader action, State Farm paid into the court all insurance coverage proceeds available from Ross's policy to satisfy tort claims asserted against her. Although John Hancock had consented in the interpleader action to a court order releasing $50,000 to the Birds as their share of the insurance proceeds, it later brought the subrogation action, seeking to enforce its subrogation claim against the Birds and Ross. Finding that the Birds and Ross were entitled to judgment as a matter of law based on the doctrine of *res judicata,* the trial court granted the defendants' motion for summary judgment. The court of appeals affirmed, holding that preclusion principles barred John Hancock's subrogation claim. The court rejected John Hancock's contention that preclusion principles should not be applied because the subrogation claim had not been actually litigated, reasoning:

> John Hancock had the opportunity to be fully heard on its claim of subrogation in the prior interpleader action. The Birds submitted an extensive memo to the trial court during the interpleader action on the issue of their claim to the fund in relation to John Hancock's claim. *The fact that John Hancock elected not to participate as fully as it could have in that prior proceeding does not prevent*

> *the application of res judicata to the case before us.*

*Id.* at 209, 590 N.E.2d at 338 (emphasis added).

Under Ohio law, then, if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action. Here, Foster was provided a full opportunity to litigate the issue of whether he obtained workers' compensation benefits through fraud. The record is silent as to Foster's reasons for not testifying or presenting evidence at the Hearing. Nevertheless, his decision to appear at the Hearing with counsel, but not to offer testimony, does not negate the preclusive effect of the Hearing Officer's findings. *See Overseas Motors, Inc. v. Import Motors Ltd.,* 375 F.Supp. 499, 516 (E.D.Mich. 1974), *aff'd,* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) ("Collateral estoppel applies only to those issues which were 'actually' or 'fully' litigated in the prior action. *However, this rule does not refer to the quality or quantity of argument or evidence addressed to an issue.* It requires only two things: first, that the issue has been effectively raised in the prior action, ... and second, that the losing party has had a 'fair opportunity procedurally, substantively, and evidentially' to contest the issue.") (emphasis added) (citations omitted). In sum, the issue of fraud was actually litigated despite Foster's decision not to participate fully in the Industrial Commission proceeding.

Foster cites the Sixth Circuit's decisions in *Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995) and *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981) in support of his assertion that the Hearing Officer's findings should not

be accorded preclusive effect because the issue of fraud was not "actually litigated." Foster's reliance on *Bursack* and *Spilman* is misplaced. *Bursack* held that a fraud judgment resulting from a trial in which the debtor did not participate had a collateral estoppel effect in the creditor's dischargeability action. *Bursack*, 65 F.3d at 53–55. There, the state trial court entered judgment against the debtor on a fraud claim. Although the debtor had obtained counsel, answered the creditor's complaint, and asserted cross-claims, he did not appear at the trial. In the subsequent dischargeability litigation in bankruptcy court, the creditor moved for summary judgment and filed the transcript of the state court trial as an exhibit in support of its motion. The Sixth Circuit rejected the debtor's argument that the state court judgment should not be accorded preclusive effect because he failed to participate in the trial. The *Bursack* court reasoned that the debtor's failure to appear at trial would not have prevented the Tennessee state court from giving preclusive effect to the judgment. The Sixth Circuit therefore concluded that the bankruptcy court properly accorded the state court judgment the same preclusive effect it would have received under Tennessee law. *Id.* at 54. *Bursack* also questioned the continued viability of the *Spilman* rule that state court default judgments cannot have preclusive effect in dischargeability litigation. *Id.* at 54–55.

In the Industrial Commission proceeding, a default judgment was not entered and Foster did appear, with counsel, at the Hearing. Hence, even if it retains vitality, *Spilman* has no application in this case, since the decision rendered against Foster was not a default judgment. As pointed out in *Bursack*, "[t]he issues [of fraud] were actually litigated to the extent that [the debtor] retained an attorney, filed an answer, asserted cross-claims, and participated in discovery ... His strategic decision not to appear at the trial does not undo his earlier active participation in the litigation." *Id.* at 54. Likewise here, Foster's election not to testify does not negate the preclusive effect of the Orders.

Foster also was afforded an adequate opportunity to obtain review of the Industrial Commission's finding of fraud. Although Foster moved for reconsideration of the Second and Third Decisions, which was denied by the Industrial Commission, he did not seek further review of the Orders.[7]

Foster therefore had both an adequate opportunity to litigate the issue of fraud in the Industrial Commission proceeding and seek review of the Orders. Accordingly, the findings of the Industrial Commission are binding and the doctrine of issue preclusion bars Foster from relitigating the

---

**7.** Litigants may obtain judicial review of Industrial Commission rulings in three ways: (1) by direct appeal to the courts of common pleas under section 4123.512 of the Ohio Revised Code; (2) by filing a mandamus petition in the Ohio Supreme Court or the Franklin County Court of Appeals; or (3) by filing a declaratory judgment action pursuant to Chapter 2721 of the Ohio Revised Code. *See Felty v. AT & T Techs., Inc.*, 65 Ohio St.3d 234, 237, 602 N.E.2d 1141, 1144 (1992). At least one Ohio court has held that "because common pleas [court] jurisdiction is limited to appeals regarding the right to participate in the [F]und and not the extent of participation," an appeal relating to a "a right to recoup overpayments would not be within the jurisdiction of the common pleas court" but, rather, is reviewable by way of a mandamus petition. *LTV Steel Co. v. Gibbs*, 109 Ohio App.3d 272, 277, 671 N.E.2d 1360, 1363 (1996). Whatever the proper avenue for seeking judicial review of the Hearing Officer's findings may have been, Foster took no action to challenge the Orders after his request for reconsideration was denied by the Industrial Commission.

issue of fraud in this adversary proceeding.

### V. *Conclusion*

Based on the foregoing, the Court concludes that there is no genuine issue of material fact for trial and the BWC is entitled to judgment as a matter of law. Given the issue-preclusive effect of the Orders, the BWC has met its burden of establishing by a preponderance of the evidence that the Repayment Obligation is nondischargeable under § 523(a)(2)(A) as a debt incurred through fraud. The Summary Judgment Motion (Doc. 10-1) is therefore GRANTED. A judgment declaring the Repayment Obligation to be nondischargeable will be entered separately.

**IT IS SO ORDERED.**